Leo W. CHARLAND, Plaintiff-Appellant,

v.

NORGE DIVISION, BORG–WARNER CORPORATION and Allied Industrial Workers of America, AFL–CIO, Muskegon Heights, Michigan, Defendants-Appellees.

No. 18506.

United States Court of Appeals
Sixth Circuit.

Feb. 21, 1969.

Certiorari Denied May 26, 1969.
See 89 S.Ct. 1786.

 

Leo W. Charland, Muskegon Heights, Mich., pro se.

Donald J. Veldman and Jerry S. Mc-Croskey, Muskegon, Mich., for appellees. Richard A. Robb, Muskegon, Mich., on the brief, Hathaway, Latimer, Clink & Robb, Muskegon, Mich., of counsel.

Before O'SULLIVAN, EDWARDS and COMBS, Circuit Judges.

EDWARDS, Circuit Judge.

Plaintiff Charland worked for Norge at its Muskegon Heights plant for 30 years. He was 55 years old in 1961 when Norge decided to move out of Muskegon Heights to Fort Smith, Arkansas. In 1961 the Norge Muskegon Heights plant had a union contract which provided seniority for the employees of "the Norge Division, Muskegon Heights plant." The contract contained no plant removal clause. The union[1] negotiated a removal agreement which retained certain pension rights for employees over 60 and minor lump sum benefits for those, like Charland, under 60. It also provided very limited removal rights to Fort Smith, where local employees were to be hired first. The removal agreement in positive language purported to terminate all seniority and pension rights and claims of the former Muskegon Heights employees.

Five years and 11 months after his job was terminated, plaintiff Charland filed a complaint under § 301 of the National Labor Relations Act, 29 U.S.C. § 185 (1964), asserting that he had a property right in his job (by contract and the United States Constitution) which the union failed to protect. A United States District Judge in the Western District of Michigan dismissed the complaint, holding in effect as to defendant Norge that appellant had no such property right, and as to defendant union that the complaint stated no cause for action.

In Oddie v. Ross Gear & Tool Co., 305 F.2d 143 (6th Cir. 1962), this court

---

1. Allied Industrial Workers of America, AFL-CIO.

decided the fundamental legal issue by squarely rejecting "the contention that plaintiffs' seniority rights at the Detroit plant are 'vested' rights, which cannot be cut off or defeated by the relocation of the plant in Tennessee." Supra at 149.

The Second Circuit, sitting en banc, has now taken the same position in a recent decision, Local 1251, International Union of United Automobile, Aircraft, etc., UAW v. Robertshaw Controls Co., 405 F.2d 29 (2d Cir. 1968). This case expressly overruled a decision upon which appellant had relied, Zdanok v. Glidden Co., 288 F.2d 99, 90 A.L.R.2d 965, (2d Cir.), *cert. denied on this issue,* 368 U.S. 814, 82 S.Ct. 56, 7 L.Ed.2d 22, (1961). It held:

"We are persuaded that the reasoning of the majority opinion in the Glidden case was erroneous and that that erroneous reasoning led to an incorrect result. For example, the basic proposition of the opinion, that seniority is a vested right, finds no support in authority, in logic or in the socio-economic setting of labor-management relations. Seniority is wholly a creation of the collective agreement and does not exist apart from that agreement. The incidents of seniority can be freely altered or amended by modification of the collective agreement. Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). In giving seniority a conceptual status apart from the provisions of the collective agreement and the intentions of the parties the Glidden opinion seriously misconceived the nature of the employment relationship and dealt 'a blow to labor-management relations.'" Local 1251, International Union of United Automobile Aircraft, etc., UAW v. Robertshaw Controls Co., supra at 33.

Even more important from the point of view of this court is the fact that the United States Supreme Court has thus far treated seniority rights as arising exclusively from the labor-management contract. Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). See also Cortez v. Ford Motor Co., 349 Mich. 108, 84 N.W.2d 523 (1957).

■ If, as these cases hold, claims to job rights arise only from the collective bargaining contract, then appellant's claims herein are limited strictly to the terms of the original contract and the August 21, 1961, Termination Agreement. We can conceive of no way by which the District Judge could have construed any contract language to provide any relief for appellant, other than the very limited removal rights or pension termination benefits which he has thus far rejected. Nor, like the District Judge, can we find any statement of facts in appellant's complaint which may be construed as stating a cause of action against the defendant union on grounds of unfair representation. The undisputed facts before the District Judge on the motion for summary judgment indicated the weakness of the union's bargaining position under the law as it stood in 1961 and stands now.

Appellant's cause has been filed and prosecuted pro se. In the District Court and on appeal, in view of his illness, his wife has been allowed to argue the case for him. She has proved an able advocate.

■ Appellant does not by any means limit his petition for relief to § 301 contract rights. He tells us, in effect, I worked 30 years for defendant Norge. At the end I am thrown out of a job unless I move hundreds of miles to another city and start as a new employee behind hundreds of local residents and without either accumulated seniority or pension rights. In the alternative if I sign a complete release of all rights arising out of my job, I get $1,500. This is fundamentally unfair. And it is a deprivation of my property rights in my job in violation of Article V of the United States Constitution.

Article V of the Constitution, of course, makes no mention of employment. But it (and the Fourteenth Amendment) does prohibit deprivation of property without due process of law. Thus appellant's assumption submits the fundamental question of whether or not there is a legally recognizable property right in a job which has been held for something approaching a lifetime.

The claim presented by this appellant brings sharply into focus such problems as unemployment crises, the mobility of capital, technological change and the right of an industrial owner to go out of business. *See* Textile Workers Union of America v. Darlington Manufacturing Co., 380 U.S. 263, 85 S.Ct. 994, 13 L.Ed.2d 827 (1965). Thus far federal law has sought to protect the human values to which appellant calls our attention by means of such legislation as unemployment compensation, 42 U.S.C. §§ 1400–1400v (1964), and social security laws, 42 U.S.C. ch. 7 (1964), as amended, (Supp. III, 1965–67). These statutes afford limited financial protection to the individual worker, but they assume his loss of employment.

Whatever the future may bring, neither by statute nor by court decision has appellant's claimed property right been recognized to date in this country. The closest approach in case law is the now overruled *Zdanok* case. But even it was founded upon a construction of the labor-management contract which is not available in the instant case. And even the most enthusiastic supporters of the *Zdanok* decision rely upon the labor-management agreement as the source of legal authority for seniority rights. *See,* e. g., Blumrosen, Seniority Rights and Industrial Change: Zdanok v. Glidden Co., 47 Minn.L.Rev. 505 (1963). Needless to say, if the United States Supreme Court wishes now to reconsider and expand the view of seniority which it expressed in Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), this case offers a vehicle.

The judgment of the District Court is affirmed.