Albert VAUGHN, Plaintiff,

v.

CHRYSLER CORPORATION,
Defendant.

Vernon A. PRANGE, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

Civ. A. Nos. 4–71262, 4–71263.

United States District Court,
E. D. Michigan, S. D.

April 30, 1974.

William D. Haynes, Haynes & Donnelly, Detroit, Mich., for plaintiffs.

A. William Rolf, Detroit, Mich., for defendant Chrysler.

Douglas E. Cutler, Dearborn, Mich., for defendant Ford.

## OPINION AND ORDER GRANTING MOTIONS TO DISMISS

KAESS, Chief Judge.

Plaintiffs' complaints read in the most favorable light, each set forth the same three claims: violation of a property or contract right, denial of due process, and age discrimination. Each defendant has brought a Motion to Dismiss, and defendant Chrysler Corporation brings, in the alternative, a Motion for Summary Judgment. Because of the almost identical wording of the complaints and the motions seeking their dismissal, these two cases have been consolidated for purposes of this Opinion and Order.

■ The claimed violation of a property right is clearly without merit. The existence of the right has been neither explained nor supported in any legal or factual sense by argument, affidavit or brief. Plaintiffs have not set forth any contract of employment or labor-management agreement. Absent such contracts or agreements, there exists no independent and legally cognizable property right to a job which one has held for a number of years. This point was discussed in Charland v. Norge Division, Borg-Warner Corp., 407 F.2d 1062, 1064–1065 (CA6 1969), wherein the Court considered the case of a worker with thirty years seniority who was rendered unemployed by a plant relocation:

"Appellant does not by any means limit his petition for relief to § 301 contract rights. He tells us, in effect, I worked thirty years for defendant Norge. At the end, I am thrown out of a job unless I move hundreds of miles to another city and start as a new employee behind hundreds of local residents and without either accumulated seniority or pension rights. In the alternative if I sign a complete release of all rights arising out of my job, I get (One Thousand Five Hundred Dollars) $1,500. This is fundamentally unfair. And it is a deprivation of my property rights in my job in violation of Article V of the United States Constitution.

\* \* \* \* \* \*

"Whatever the future may bring, neither by statute nor by court decision, has appellant's claimed property right been recognized to date in this country. The closest approach in case law is the now overruled *Zdanok* [Zdanok v. Glidden Co., 288 F.2d 99 (2d Cir.)] case. But even it was founded upon a construction of the labor-management contract which is not available in the instant case. And even the most enthusiastic supporters of the *Zdanok* decision rely upon the labor-management agreement as the source of legal authority for seniority rights."

■ With regard to plaintiffs' Fourteenth Amendment Due Process claims, there are noticeably absent from the complaints any allegations sufficient to establish state action in the denial of employment. It is clear that the prohibitions of the Fourteenth Amendment are only operative against actions by the State and do not apply to private conduct. In Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L. Ed.2d 627 (1972), the Supreme Court reiterated this basic requirement:

"In 1883, this court in The Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835, set forth the essential dichotomy between discriminatory action by the State, which is prohibited by the Equal Protection Clause, and private conduct, 'however discriminatory or wrongful,' against which the clause 'erects no shield,' (citations omitted)." 407 U.S. at 172, 92 S.Ct. at 1971.

Even if there was some basis for finding the requisite State action (which there is not), the Fourteenth Amendment claims must fail for the additional reason that there has been no depriva-

tion of property or liberty as those terms are used in the Fourteenth Amendment (see *Charland, supra*).

To the extent that the plaintiffs base their complaints on allegations of violations of property rights and the Fourteenth Amendment, there has been a failure to state a claim upon which relief can be granted.

Plaintiffs also set forth a claim based upon alleged violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 through 634.

Section 14(b) of the Act provides in part as follows:

"(b) In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under Section 7 of this Act before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated . . ."

Section 7(d) of the Act provides in part as follows:

"(d) No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action."

\* \* \* \* \* \*

As § 7(d) demonstrates, in an action brought in Michigan (which, as discussed below, prohibits age discrimination in employment and has established a State authority to grant relief from such discrimination), an employee must commence proceedings under Michigan's laws prohibiting age discrimination, and those proceedings must have been in progress for at least sixty days before plaintiff may file his notice with the Secretary of Labor in preparation for bringing suit. Further, he must file such notice with the Secretary of Labor and give the Secretary sixty days' prior notice of his intent to bring such an action. The failure to comply with these prerequisites prohibits the maintenance of an action under the Age Discrimination Act.

Michigan Compiled Laws, Section 423.303a(a), provides in part as follows:

"Sec. 3a. It is an unfair employment practice:

(a) For any employer, because any individual is between the ages of 18 and 60 . . . to refuse to hire or otherwise to discriminate against him with respect to hire, tenure, terms, conditions or privileges of employment . . . ."

Michigan Compiled Laws, Section 423.307(a), provides in part as follows:

"The commission is empowered and directed, as hereinafter provided, to prevent any person from engaging in unfair employment practices."

Subsequent provisions of Michigan's Fair Employment Practices Act provide for persons allegedly aggrieved by an unfair employment practice to file a complaint, to have that complaint adjudicated in an administrative hearing and to obtain relief. It is thus apparent that, as provided in § 14(b) of the Act, Michigan does prohibit discrimination in employment because of age, and it has established a statutory authority to grant relief from such alleged discrimination. Thus, the requirements of § 14(b) are applicable to the plaintiff Vaughn (age 56), and nowhere in the record is there an allegation of compliance therewith. (Plaintiff Prange, age 61, is not covered by the Michigan Age Discrimination laws.)

One case applying the § 14(b) requirement is Goger v. H. K. Porter Company, Inc., 5 EPD ¶ 8562 (N.J., Jan. 23, 1973), in which the plaintiff initially filed a charge of age discrimination with the Secretary of Labor as § 7 of the Act requires. When the attempted reconciliation proved fruitless, the representative of the Office of the Secretary of Labor advised plaintiff that she was free to commence her suit. The District Court held that this was bad advice be-

cause the Act requires prior resort to state remedies if they exist. As plaintiff had not complied with that requirement, her suit was to be dismissed.

Plaintiff Goger appealed that decision to the Third Circuit Court of Appeals, Goger v. H. K. Porter Company, Inc., 492 F.2d 13 (CA3, 1974). The Third Circuit noted that under New Jersey law, plaintiff's complaint is barred in that such law requires complaints to be filed within 180 days after the alleged act of discrimination. The Third Circuit compared the sixty-day state agency referral period requirement in §§ 14(b) and 7(d)(2) of the Act with the similar statutory arrangement provided for under Title VII of the Civil Rights Act of 1964; see 42 U.S.C. § 2000e–5(c). The Court held that Congress intended the same arrangement for the Age Discrimination Act as Congress had provided for in Title VII. The Court said:

> "We therefore conclude that section [14(b)] required appellant to seek relief from the appropriate New Jersey agency prior to instituting her suit in the federal district court."

Nevertheless, the Court considered that equitable relief was appropriate because of the absence of any prior judicial construction of Section 14(b), and also in view of the remedial purposes of the Act. However, the Court said:

> "In the future, however, we think the Congressional intent that the agencies be given the initial opportunity to act should be strictly followed and enforced."

McGarvey v. Merk and Company, 359 F.Supp. 525 (D.C.N.J., 1973), the plaintiff was dismissed from employment at age 59 following 21 years of work with defendant. He filed his notice of intent to sue with the Secretary of Labor but did not allege he had also filed a complaint with or commenced proceedings before the Pennsylvania Human Relations Commission (defendant's plant was in Pennsylvania). In replying to defendant's Motion to Dismiss, plaintiff answered this argument contending that Section 14(b) contemplates federal *or*

state remedies, and is applicable only when state proceedings have already been commenced. The Court rejected that argument and dismissed the complaint, based upon judicial interpretation of the analogous provision in Title VII of the Civil Rights Act of 1964, which likewise requires resort to state remedies as a jurisdictional prerequisite.

■■ It appears then that the requirements of § 14(b) can be waived only when the plaintiff has justifiably and detrimentally relied upon official advice in neglecting to pursue state remedies. Such a situation confronted the Third Circuit in *Goger* where the Secretary of Labor's Office had erroneously advised the plaintiff that she was free to commence her federal court action, and by the time the error was discovered, it was too late to file under the state law. Those cases waiving prior resort to state remedies under Title VII of the 1964 Civil Rights Act have relied upon similar reasoning for establishing an exception to the general rule. See Crosslin v. Mountain States Tel. and Tel. Co., 422 F.2d 1028 (CA9 1970), vacated and remanded, 400 U.S. 1004, 92 S. Ct. 562, 27 L.Ed.2d 618 (1971); Mitchell v. Mid-Continent Spring Company of Kentucky, 466 F.2d 24 (CA6 1972). In the present case, there has been neither allegation or showing of detrimental reliance or the like which would influence the Court in the exercise of its equitable discretion. The failure of the complaint to set forth a timely resort to state remedies is, therefore, a fatal jurisdictional defect as to the plaintiff Vaughn.

It would also appear that both plaintiffs have run afoul of § 7(d) of the Act, which requires that a plaintiff provide the Secretary of Labor with sixty days' notice before commencing suit. In the instant actions, neither complaint alleges the timely satisfaction of this jurisdictional requisite.

■ A comprehensive discussion of this notice requirement is contained in Burgett v. Cudahy Co., 361 F.Supp. 617, 7 EPD ¶ 9123 (D.C.Kan.1973). That decision, in the context of a class action

proceeding, is helpful in providing an explanation of the purpose of Congress in creating this notice requirement:

"As is evident from the unambiguous language of the statute [the court is here at page 6713 discussing § 7(d)], the emphasis is on private settlement and the elimination of age discrimination without formal litigation. The purpose for requiring an individual to file notice of a violation prior to the commencement of an action is two-fold: first, it puts the Secretary of Labor on notice of possible violations of the Act so that he can investigate the claims in order to determine whether agency action should be taken; and second, it puts the alleged discriminator on notice that a complaint has been filed against him so that he can voluntarily rectify any discriminatory practice. It therefore serves to facilitate the avoidance of unnecessary and expensive litigation by encouraging voluntary compliance with the Act's provisions.

". . . *If this clearly expressed congressional intent is to be served, an aggrieved individual cannot be permitted to bypass the administrative step.* The Secretary must be provided with notice of a violation and a reasonable length of time within which to seek the elimination of the discriminatory practices if he is to meaningfully exercise his conciliatory authority. Accordingly, *the filing of a notice of intent to sue within . . . sixty days prior to the institution of an action, is a jurisdictional prerequisite* to the maintenance of an action under the Act. See Moses Grossfield v. W. B. Saunders Company . . ." (emphasis supplied)

There is ample authority under the analogous provisions of Title VII of the 1964 Civil Rights Act standing for the proposition the exhaustion of federal administrative remedies in Title VII actions is jurisdictional and must be specifically alleged in the complaint. Equal Employment Opportunity Commission v. Griffin Wheel Co., 360 F.Supp. 424 (D.C. Ala.1973); Logan v. General Fireproof-

ing Co., 309 F.Supp. 1096 (D.C.N.C. 1969); Burney v. North American Rockwell Corp., 302 F.Supp. 86 (D.C.Cal. 1969); Nishiyama v. North American Rockwell Corp., 49 F.R.D. 288 (D.C.Cal. 1970). See also Stebeins v. Continental Insurance Companies, 143 U.S.App.D.C. 121, 442 F.2d 843 (1971), and the authorities cited.

■ Notwithstanding the above authority, plaintiffs contend that injunctive relief is appropriate during the conciliation period and the complaint should not be dismissed. The case of Drew v. Liberty Mutual Insurance Co., 480 F.2d 69 (CA5 1973), although cited as supporting that argument, is plainly distinguishable from the present case. In *Drew* the plaintiff brought suit for the sole purpose of seeking a preliminary injunction to prevent her discharge in alleged retaliation for the filing of a sex discrimination complaint with Equal Employment Opportunity Commission. Such retaliatory discharges are specifically prohibited by § 704(a) of Title VII. The Court held that an injunction could issue for the benefit of an employee who had been discharged in retaliation for seeking administrative relief. It was emphasized that the complaint did not seek a final adjudication on the discrimination claim, and if such had been the case, the rule would be different:

"It must be remembered that this is not an action brought by Ms. Drew for a final adjudication of her right to be protected against the alleged discriminatory conduct of the defendant. That matter is being considered by the Commission in the usual course. She normally would not be permitted to file a suit on the merits unless the Commission had been unable for a period of 180 days to effect conciliation. The 180-day provision, of course, does not apply here, because the action brought by Ms. Drew is merely one to seek temporary relief pending the action of the Commission." 480 F.2d at 73, n. 5.

**148**

In the instant case, the complaints quite obviously seek an adjudication of the merits of the discrimination claims, and there is no allegation of a discharge in retaliation for the filing of a complaint with the E.E.O.C. The reasoning of *Drew* is clearly inapposite. The Court is, therefore, without jurisdiction to hear the age discrimination claims.

Because of the resolution of those issues already discussed, it is unnecessary to decide defendant Chrysler Corporation's claim of a § 4(f)(2) defense, to-wit: the existence of a bona fide retirement plan.

Therefore, it is ordered that defendants' Motions to Dismiss are granted.