Robert E. SMITH, Plaintiff,

v.

JOS. SCHLITZ BREWING COMPANY,
Defendant.

Civ. A. No. 75–2216.

United States District Court,
D. New Jersey.

May 28, 1976.

David Shor, Union, N.J., for plaintiff.

Garrett E. Brown, Jr., Westfield, N.J., Stryker, Tams & Dill, Newark, N.J., for defendant.

## OPINION

STERN, District Judge.

This matter comes before the Court on defendant's motion to dismiss the complaint for lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), and in the alternative for summary judgment. By letter of April 7, 1976, the Court notified the parties that the portion of the motion brought under Rule 12(b)(6) would be treated as a motion for summary judgment under Rule 56, as provided in Rule 12(b). Counsel presented oral argument to the Court on May 14, 1976, and decision was reserved.

Defendant premises its motion to dismiss on three arguments:

(1) The complaint fails to allege that plaintiff commenced procedures under New York's Human Rights Law, as defendant contends he was required to do before instituting suit, pursuant to 29 U.S.C. §§ 626(d) and 633(b), and therefore the Court lacks subject matter jurisdiction and the complaint fails to state a claim;

(2) Plaintiff failed to give notice to the Secretary of Labor of his intent to sue until October 6, 1975, beyond the time limit established by 29 U.S.C. § 626(d), and therefore the Court lacks subject matter jurisdiction;

(3) Paragraph 12 of the complaint fails to state the date on which plaintiff gave notice to the Secretary of his intent to sue, and therefore the jurisdictional allegations of the complaint fail to meet the requirements of F.R.Civ.P. 8(a)(1).

## I. FACTUAL BACKGROUND

Plaintiff's factual allegations, which the Court is required to take as proved for the purposes of these motions, may be briefly summarized.

Plaintiff is a New Jersey citizen who was hired by defendant on October 20, 1952. Throughout his employment with defendant, plaintiff was Industrial Relations Manager of defendant's Brooklyn brewery.

Plans to close the Brooklyn plant had begun to be formulated sometime in 1969. After the plant ceased production on March 16, 1973, plaintiff was appointed resident manager through December, 1973, to assist in the sale of the plant, its equipment and its machinery. On August 22, 1973, plaintiff had his 62nd birthday. According to defendant's rules and regulations, he would not have had to retire until age 65, or on or about August 22, 1976. Nevertheless, plaintiff was involuntarily retired by defendant on December 31, 1973.

Plaintiff contends that "as early as 1969," he had discussed his future status with defendant in light of defendant's known intention to close the Brooklyn plant. Plaintiff alleges that he was repeatedly assured by defendant, both verbally and in writing, that when an Industrial Relations Manager's position became available he would be given the opportunity to take it. He was also assured, according to the complaint, that "all efforts would be made to retain the plaintiff until he reached the mandatory retirement age of 65 . . . ." (Complaint, ¶ 6)

In late 1972, defendant considered plans for opening a plant in Syracuse, New York. Defendant announced these plans in May or June, 1973, and at that time expected to begin production in Syracuse by January 1, 1976. On several occasions during 1973, plaintiff discussed with representatives of defendant the possibility of his becoming Industrial Relations Manager of the Syracuse plant. The complaint alleges that plaintiff "was repeatedly advised by the defendant that he was being given every consideration for that position, although the plaintiff was not given every consideration for that position." (Complaint, ¶ 8)

It is further alleged that defendant "had commenced plans for interviews" for the Syracuse IRM position before plaintiff was involuntarily retired, and that a person was hired for that position in early 1974 and began his duties in that capacity even before his transfer to Syracuse in July 1974. Plaintiff therefore contends that the position in question existed at the time of plaintiff's forced retirement, but that it was not offered to him because of his age. The operative allegation of the complaint states:

> The defendant advised the plaintiff that the plaintiff would be 64 years of age when productions [sic] commenced in Syracuse and that the plaintiff could, therefore, not have that job.

(Complaint, ¶ 10) The complaint does not specify which representative of defendant made this representation to plaintiff.

Plaintiff contends that he learned only after his forced retirement that defendant maintained that it had failed to transfer him to the Syracuse plant on the grounds of his work experience and performance. He alleges that he was denied transfer to the Syracuse job solely because of his age, and that defendant thereby wilfully violated the Age Discrimination in Employment Act of 1967 (ADEA), Title 29 United States Code, §§ 621, *et seq.*

## II. LEGAL ANALYSIS

■ *A. Failure to file complaint under New York Human Rights Law.*

Title 29 United States Code, § 626(d) provides as follows:

(d) No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—

(1) within one hundred and eighty days after the alleged unlawful practice occurred, or

(2) in a case to which section 633(b) of this title applies, within three hundred days after the alleged unlawful practice occurred or within thirty days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

Upon receiving a notice of intent to sue, the Secretary shall promptly notify all persons named therein as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

Title 29 United States Code, § 633(b) provides in pertinent part as follows:

(b) In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated . . . . .

The United States Court of Appeals for the Third Circuit interpreted the requirements of these two sections in *Goger v. H. K. Porter Co., Inc.,* 492 F.2d 13 (3rd Cir. 1974). *Goger* involved a suit by plaintiff against her former employer for terminating her employment on grounds of age. The district court dismissed the suit for lack of jurisdiction, holding that the ADEA required plaintiff to submit a complaint to the appropriate New Jersey state agency at least 60 days before instituting an action in federal court.

On appeal, Judge Hunter identified the issue as whether § 633(b) required the plaintiff to seek redress initially before the appropriate state agency, assuming that one existed, before beginning suit in federal court. Plaintiff Goger had not done so; rather, her counsel had notified the Secretary of Labor under § 626(d) shortly after she was dismissed. The Secretary's attempts to achieve a voluntary disposition were in vain, and the Secretary's compliance officer had advised plaintiff that she was free to institute suit.

In the face of the arguments of Goger, and of the Secretary of Labor as *amicus,* that the ADEA gives an aggrieved individual a choice of pursuing federal or state remedies rather than requiring that individual to seek redress first from a § 633(b) state agency if one exists in the state in which the alleged violation took place, Judge Hunter wrote:

We agree with the district court, however, that although the Act does not require an aggrieved person to exhaust state remedies as a condition precedent to the institution of a federal suit, it does require that the State be given a threshold period of sixty days in which it may attempt to resolve the controversy, normally by voluntary compliance.

492 F.2d at 15. Judge Hunter made an extensive comparison of the ADEA and Title VII of the 1964 Civil Rights Act. Nevertheless, the court vacated the decision of the district court on "equitable" grounds. Judge Hunter noted Goger's and the Secretary's argument that Goger's federal complaint should not be barred because she filed in federal court only after seeking relief from the Department of Labor, and after a Labor Department compliance officer had advised her that she was free to file suit. Judge Hunter wrote:

While we do not consider the failure to file a timely complaint with the appropriate state agency a mere "technical" omission [footnote omitted], we nonetheless consider equitable relief to be appropriate

in view of the total absence to our knowledge, of any judicial decision construing section 633(b) during the period involved here and in view of the remedial purpose of the 1967 Act. [footnote omitted] In the future, however, we think the Congressional intent that state agencies be given the initial opportunity to act should be strictly followed and enforced. [citation omitted]

> For the reason stated in the first sentence of this paragraph, we need not decide on this record whether a plaintiff must always proceed first before the state agencies.

492 F.2d at 16–17. (Emphasis added)

In the Court's view, the underlined passage confirms that *Goger* does not hold what defendant asserts that it holds: that in this Circuit failure to proceed first before a § 633(b) agency is a jurisdictional defect. The majority opinion must be considered in the context of Judge Garth's concurring opinion, in which he asserts:

> The various dissimilarities between the two Acts (and in particular the presence of § 633(a) [footnote citing text of § 633(a) omitted] in ADEA, which has no counterpart in Title VII) impel me to the conclusion that there is no requirement that a plaintiff must first attempt to utilize available state remedies before filing suit under the 1967 Act.  .  .  .
>
> I do not believe that it was the intent of Congress to require, prior to the institution of a Federal action, the commencement of a State proceeding which, under § 633(b), need not be concluded and which in any event would be superseded by the filing of the Federal action under § 633(a).

492 F.2d at 17–18. The holding of the Court of Appeals in *Goger* is limited to the facts of that case, and the court specifically declined to hold that a state proceeding must always be commenced, where appropriate under § 633(b), before the federal action lies.

Those courts which have considered this issue since *Goger* have split on the question. Dictum by the Ninth Circuit expresses agreement with Judge Hunter's majority opinion, but disposes of the case on the ground that there was no state agency in California which qualified under § 633(b). *Curry v. Continental Airlines,* 513 F.2d 691, 693 (9th Cir. 1975). *Cf. Garces v. Sagner International, Inc.,* 534 F.2d 987 (1st Cir. 1976). The district court opinions are split. In *Vaughn v. Chrysler Corp.,* 382 F.Supp. 143 (E.D.Mich.1974), the court held that § 633(b) created a jurisdictional requirement that plaintiff pursue remedies before a state agency if the agency qualifies under § 633(b), and that this jurisdictional requirement "can be waived only when the plaintiff has justifiably and detrimentally relied upon official advice in neglecting to pursue state remedies." 382 F.Supp. at 146. The court cited *Goger* as an example of justifiable detrimental reliance. The *Vaughn* court held that in the case before it the plaintiff had failed to show "detrimental reliance or the like which would influence the Court in the exercise of its equitable discretion. The failure of the complaint to set forth a timely resort to state remedies is, therefore, a fatal jurisdictional defect as to the plaintiff Vaughn." 382 F.Supp. at 146.

The two most recent district court decisions hold otherwise. In *Skoglund v. Singer Co.,* 403 F.Supp. 797 (D.N.H.1975), plaintiff filed with the state agency seven months after the alleged act. The law of Massachusetts, the state in which the discrimination was alleged to have occurred, required such filing to be made within six months. Thus plaintiff was barred from state relief, and the district court was faced with the issue whether plaintiff's failure to file timely before the state agency precluded the federal court from taking jurisdiction. After reviewing the cases which had interpreted the ADEA's various filing requirements strictly, Judge Bownes held:

> I do not believe that plaintiff's failure to timely comply with Section 633(b) deprives this court of the power to hear this case. There is no indication in either the history or the wording of ADEA that the Section 633(b) requirement is jurisdiction-

al. . . . I find that, although Section 633(b) requires timely resort to state remedies before a complaint may be filed in federal court, this requirement is not jurisdictional; therefore, plaintiff's failure to notify the Massachusetts Commission Against Discrimination in a timely fashion does not bar him from this court.

403 F.Supp. at 802–803.

The court cited a recent declaration of the Supreme Court:

Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.

*Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972) (failure to comply with procedural technicality under Title VII deferral to state agencies held no bar to federal suit).

The most recent case involving the requirements of § 633(b) is *Vasquez v. Eastern Air Lines, Inc.,* 405 F.Supp. 1353 (D.P.R. 1975). After an exhaustive examination of the legislative history of the ADEA, and specifically endorsing Judge Garth's opinion in *Goger,* Judge Pesquera wrote:

The legislative history of the ADEA is thus devoid of any indication that Congress intended to restrict an individual's right to file suit under the Federal law to cases in which proceedings had first been commenced under State law, and this indication cannot be supplied by looking at the legislative history of Title VII. . .

So far as the ADEA is concerned, *the sole Congressional purpose underlying the enactment of Section 14 [29 U.S.C. § 633] was to give the State time to act on a complaint if the aggrieved chose to proceed there first.* To hold otherwise would be to create a procedural pitfall for unsuspecting individuals which could easily serve, as it did in the instant case . . to deprive aggrieved individuals of their day in court, thereby thwarting the objective of this remedial legislation, whose declared purpose, as stated in Section 2(b) of the Act (29 U.S.C. § 621(b)), is "to promote the employment of older [workers] based on their ability rather than

age" and "to prohibit arbitrary age discrimination in employment."

405 F.Supp. at 1357. (Emphasis added)

After consideration of all the decided cases, this Court holds that § 633(b) creates no jurisdictional requirement. The language of that section carefully avoids what would have been a simple statement of an exhaustion requirement, and suggests only that if a state proceeding is brought, the state agency should be given 60 days to act before the federal proceeding supplants it. *See* Title 29 United States Code, § 633(a).

Accordingly, defendant's motion to dismiss the complaint, and in the alternative for summary judgment, on the basis of plaintiff's failure to commence proceedings under the New York Human Rights Law will be denied.

*B. Notification of the Secretary of Labor of intent to sue.*

The Act provides for two alternative time limits for filing of notice of intent to sue with the Secretary of Labor. Title 29 United States Code, § 626(d). The statute provides that no civil action may be commenced under the Act until the prospective plaintiff gives the Secretary at least 60 days' notice of an intent to file the action. The notice must be filed with the Secretary within 180 days of the alleged unlawful practice, except that "in a case to which section 633(b) of this title applies," the notice may be filed within 300 days of the alleged unlawful practice.

■ Since the Court has held that plaintiff was not required to commence proceedings under state law before bringing the instant civil action, it is appropriate to hold him to the shorter filing period of 180 days. *Skoglund v. Singer Co., supra,* at 803.

Defendant does not contest that plaintiff filed a notice of intent to sue with the Secretary at least 60 days before filing the instant complaint. The issue is solely whether plaintiff fulfilled the filing requirement within the 180-day period of

§ 626(d)(1). Plaintiff was terminated by defendant on December 31, 1973. It is plaintiff's contention that his notice of intent to sue was filed with the Secretary on June 17, 1974. Defendant maintains that the notice was not filed until October 2, 1975. The instant action was commenced on December 23, 1975.

Plaintiff states by affidavit that he visited the Paterson, New Jersey office of the Department of Labor on June 17, 1974. At that time he apparently lodged an oral complaint with the Department, and submitted copies of his correspondence with defendant. The first written evidence of plaintiff's complaint is his letter dated June 25, 1974 to the Area Director of the Wage and Hour Division of the Department of Labor in Milwaukee, defendant's principal place of business. The letter briefly summarizes plaintiff's complaint and makes reference both to the June 17 meeting with a compliance officer in the Paterson office of the Division, and to the supporting correspondence which was apparently filed in Paterson on June 17 for forwarding to Milwaukee.

Plaintiff concedes that neither the June 17 oral complaint nor the June 25 letter specifically set forth an intent to sue:

> When the Plaintiff notified the Secretary on June 17, 1974, he set forth in detail the nature of his grievance against the Defendant and the basis for which he was making such a charge. It is conceded that the Plaintiff did not specifically state that he intended to sue Schlitz in his initial claim filed with the Secretary. The Plaintiff submits, however, that the notice given was satisfactory to satisfy Section 626(d) of "the Act."

Brief of Plaintiff, at 4. No such specific notice of intent to sue was filed until October 2, 1975, well beyond either the 180- or 300-day period.

Plaintiff contends that an aggrieved individual's obligation to notify the Secretary is fulfilled "if an employee within 180 days of his discharge advises the Secretary that he has been discharged from his employment because of an alleged Act of Discrimination based upon age." (Brief, at 4) Plaintiff relies on *Woodford v. Kinney Shoe Corp.,* 369 F.Supp. 911 (N.D.Ga.1973). In that case, plaintiff made an oral complaint to the Labor Department 160 days after the alleged violation. The Department processed the complaint and told her that it had been timely filed, but that the Department had 60 days to attempt conciliation. Her formal notice of intent to sue was not filed until she had retained a lawyer, about 250 days after the unlawful act. Chief Judge Smith wrote:

> This court holds that where an employee, within one hundred eighty days of his discharge, reports to the Labor Department that he has been discharged from his job because his employer discriminates against older workers, the employee's right to file suit later under the Age Discrimination Act is preserved, even if the employee does not in so many words declare to the Department his intent to file such an action.
>
> The persons making complaints to the Department will in the most part not be lawyers; they should not be compelled to adhere to strict rules of pleading merely to preserve their right to come to court to enforce their right to be free of discrimination [in] employment because of their age. If they are to be able to enforce the Age Discrimination Act, their complaints should be construed not narrowly and technically, but broadly and liberally. Where the employee identifies himself and his employer and reports facts which, if true, would support a cause of action pursuant to the Act, the Labor Department should assume that the aggrieved employee will take whatever steps are necessary to enforce his rights, including court action; thus, an intent to file suit is implied in a complaint of age discrimination in employment.

369 F.Supp. at 915.

The court's analysis of the Act's purpose in *Woodford* was expressly endorsed by the Eighth Circuit in *Moses v. Falstaff Brewing*

*Corp.*, 525 F.2d 92 (8th Cir. 1975). Though that case turned on the determination of the date of the unlawful occurrence, the Court observed:

> The Age Discrimination Act is remedial and humanitarian legislation. It is to be construed liberally to achieve its purpose of protecting older employees from discrimination. *See Woodford v. Kinney Shoe Corp.*, 369 F.Supp. 911, 914–15 (N.D. Ga.1973). A procedural requirement of the Act, of doubtful meaning in a given case, should not be interpreted to deny an employee a claim for relief unless to do so would clearly further some substantial goal of the Act. *Id.*, at 914–15.

525 F.2d at 93–94. The court observed that most courts have regarded the timely filing of a notice of intent to sue as a jurisdictional requirement, citing *Powell v. Southwestern Bell Telephone Co.*, 494 F.2d 485, 487–488 (5th Cir. 1974), but held that the plaintiff's actions in *Moses* were not to be considered a failure to file a timely notice.

The *Moses* court identified the purpose of the 180-day requirement:

> The 180-day notice requirement is intended to serve the purposes of the Act by insuring that the Secretary of Labor is called in for conciliation purposes when disputes are fresh and by informing the employer of his employee's intentions at an early date. *Brennan v. Ace Hardware Corp.*, 495 F.2d 368, 374 (8th Cir. 1974). See also *Powell v. Southwestern Bell Telephone Co.*, supra, 494 F.2d at 488.

525 F.2d at 94.

Application of this reasoning to the facts here leads this Court to conclude that no substantial purpose of the Act would be furthered by barring plaintiff's complaint. The correspondence submitted to the Court by both parties makes clear that the complaint made by plaintiff on June 25, 1974 was immediately assigned to a Labor Department compliance officer. The same procedure was followed by the Department in *Goger* after the plaintiff, through counsel, filed a letter that did specifically state an intent to sue. 492 F.2d at 14–15. For all purposes contemplated by the statute, therefore, the June 25 letter put the instant matter before the Secretary, and he was enabled by the complaint and the correspondence furnished by plaintiff to proceed with whatever voluntary conciliation proceedings he desired to conduct. The Department's letter of July 11, 1974 makes specific reference to those conciliation, conference and persuasion procedures.

*The second goal of the notice requirement*, as analyzed by the Eighth Circuit in *Moses*, is to inform the employer of the employee's pending grievance. Defendant relies on *Dartt v. Shell Oil Co.*, 10 FEP Cases 844 (D.Okla.1975), in which the court held that the 180-day requirement was jurisdictional, and that the mere filing of a complaint with the Department of Labor without mentioning an intent to sue did not satisfy the statute. The court held that the purpose of the 180-day provision was to ensure "that a potential defendant become aware of its status and the possibility of litigation reasonably soon after the alleged discrimination." 10 FEP Cases at 848.

Since the Secretary does not automatically notify the potential defendant until a letter specifically stating "I intend to sue" is received, defendant argues, construction of a mere complaint letter as a notice of intent to sue thwarts a substantial purpose of the 180-day requirement.

It is true that the Secretary did not inform Schlitz of plaintiff's complaint until the Department received the formal "intent to sue" letter dated October 2, 1975. The Department sent Schlitz formal notification of Smith's intent to sue by letter of October 6, 1975, its only notice to Schlitz, and set up a conference between a compliance officer and a Schlitz representative. *See* Affidavit of William R. Young. It is nevertheless clear, however, that plaintiff and defendant had been in regular correspondence with regard to plaintiff's grievance for a substantial period of time between plaintiff's termination in December, 1973 and plaintiff's first contact with the Department of Labor in June, 1974. Plaintiff's June 25

letter to the Department states that copies of correspondence between plaintiff and defendant's Vice President in charge of Industrial Relations and defendant's President and Chairman of the Board were submitted to the compliance officer in Paterson, and the Department's July 11, 1974 letter to plaintiff confirms that this correspondence was filed. Defendant can hardly contend that it was unaware of plaintiff's grievance. It would be unrealistic to suggest that defendant was ignorant of the intentions of a management employee who had prosecuted his grievance in so assiduous a manner. Both *Dartt* and defendant rely on *Powell v. Southwestern Bell Telephone,* 494 F.2d 485 (5th Cir. 1974), in which the court held the 180-day requirement to be jurisdictional, and commented:

It is logical that the 180 day notice was intended to insure that potential defendants would become aware of their status and the possibility of litigation reasonably soon after the alleged discrimination since the notice goes from the Secretary of Labor on to the employer involved. In turn this would promote the good faith negotiation of employers during the 60 day conciliation period and provide an opportunity for preservation of evidence and records for use at a trial necessitated by failure of negotiation.

494 F.2d at 488.

Both *Powell* and *Dartt* hold that the 180-day filing requirement is jurisdictional. This Court agrees. The real question here is whether plaintiff's prompt filing of a letter of complaint and copies of correspondence with the Labor Department satisfies this requirement. On the facts of this case, and with due regard for the remedial purpose of the Act, this Court holds that it does.

The sum of plaintiff's actions with regard both to defendant and to the Department of Labor was sufficient to satisfy the dual goals of the notice requirement. Defendant was given fair warning of the pendency of plaintiff's grievance, and the Secretary was afforded the opportunity to pursue such efforts at conciliation as he deemed appropriate. Indeed, according to plaintiff's formal notice of intent to sue, dated October 2, 1975, the department conducted an initial investigation of the complaint in June and July of 1974. Plaintiff's file was then forwarded to four separate offices of the Department over a period of 15 months. Though no final disposition was ever made, there were apparently efforts to conciliate during this period.

Accordingly, defendant's motion to dismiss the complaint, and in the alternative for summary judgment, on the basis of plaintiff's alleged failure to give timely notice to the Secretary of Labor of his intent to sue, will be denied.

*C. Failure to allege the date of notice of intent to sue.*

The complaint fails to specify the date on which plaintiff gave notice of intent to sue to the Secretary of Labor. Plaintiff contends in his brief that such notice was given on June 17, 1974. In the Court's view, as elucidated in this opinion, notice was given on June 25, 1974. Since plaintiff was terminated on December 31, 1973, both dates are within 180 days of termination. Plaintiff is directed to file an amended complaint within 10 days hereof in which the date of filing of notice of intent to sue is set forth in the jurisdictional statement. On the condition that such an amended complaint be timely filed, the motion to dismiss the complaint, or in the alternative for summary judgment, based on Federal Rule of Civil Procedure 8(a)(1) will be denied.