Clement GABRIELE, Plaintiff,

v.

CHRYSLER CORPORATION, Defendant.

Civ. A. No. 75–72164.

United States District Court,
E. D. Michigan, S. D.

July 21, 1976

V. Paul Donnelly, Haynes & Donnelly, Detroit, Mich., for plaintiff.

Keith A. Jenkins, Chrysler Corp., Detroit, Mich., for defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CORNELIA G. KENNEDY, District Judge.

Plaintiff in this action alleges that his employment with defendant was terminated because of his age. Although there are several theories stated in the complaint which plaintiff believes entitle him to relief, the sole theory which would give this Court jurisdiction is the claim that plaintiff's termination was a violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*

■ Defendant has moved for summary judgment urging that plaintiff's admitted failure to file a complaint with the Michigan Civil Rights Commission within the 90 days provided by State law bars plaintiff from bringing a federal action.[1] Plaintiff

---

1. If defendant is entitled to summary judgment as to this federal claim, the remaining parts of the complaint should be dismissed without prejudice. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

asserts that he has the option of filing a complaint with the State or not, and, further, that even if he must file such a complaint he is not restricted to doing so within the 90-day limitation period of the Michigan statute.

The relevant dates are as follows:

1. May 9, 1975, plaintiff terminated;
2. August 15, 1975, plaintiff attempts to file complaint with Michigan Civil Rights Commission;
3. September 3, 1975, Michigan Civil Rights Commission writes to plaintiff, stating that it "cannot accept your complaint" because it was not filed within 90 days of the act of alleged discrimination as required by state law;
4. November 6, 1975, the instant action filed in District Court.

The complaint alleges that plaintiff has given the Secretary of Labor 60 days' notice of his intent to sue as required by the Act. While no dates are mentioned, defendant does not dispute this allegation.

The Age Discrimination in Employment Act includes the following provisions:

No civil action may be commenced by any individual under this section until the individual has given the Secretary [of Labor] not less than sixty days' notice of an intent to file such action. Such notice shall be filed—

(1) within one hundred and eighty days after the alleged unlawful practice occurred, or

(2) in a case to which section 633(b) of this title applies, within three hundred days after the alleged unlawful practice occurred or within thirty days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

29 U.S.C. § 626(d).

Section 633(b) referred to in the preceding passage reads, as follows:

In the case of an alleged unlawful practice occurring in a state which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated, . . . . If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority.

Michigan is clearly a state which has both an act prohibiting age discrimination, MSA § 17.458(3a), and an agency empowered to enforce the statute. MSA § 17.458(7). See *Eklund v. Lubrizol Corp.*, 529 F.2d 247, 250 (6th Cir. 1976).

The Michigan statute contains the following provision regarding the time for filing of complaints:

Any individual claiming to be aggrieved by an alleged unlawful employment practice may, by himself or his agent, make, sign and file with the board, within 90 days after the alleged act of discrimination, a verified complaint in writing. . .

MSA § 17.458(7)(b).

■ There are few reported cases dealing directly with the issue raised here. However, most courts have agreed that the age discrimination statute should be interpreted consistently with the almost identical language of Title VII of the Civil Rights Act of 1964. See *Goger v. H. K. Porter*, 492 F.2d 13 (3d Cir. 1974); *Curry v. Continental Airlines*, 513 F.2d 691 (9th Cir. 1975). The legislative history of the age discrimination statute, discussed at length, *infra*, supports this conclusion.

The parallel provisions of Title VII are, as follows:

In the case of an alleged unlawful employment practice occurring in a State or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereor [sic], no charge may be filed [with the EEOC] under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law unless such proceedings have been earlier terminated. . . .

42 U.S.C. § 2000e–5(c).

While several courts have said that the requirements of sections 2000e–5(c) and/or 633(b) are not technically "jurisdictional", see e. g., *EEOC v. Wah Chang Albany Corporation*, 499 F.2d 187 (9th Cir. 1974) (plaintiff not required to plead filing with state agency) and *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975) (court permitted Title VII suit when plaintiff filed complaint within short time after learning that her discharge, at a much earlier point, may have been discriminatory), most of the courts that have considered Section 633(b) have said that filing with the state agency is necessary in order to permit the filing of a civil action. See *Goger v. H. K. Porter*, 492 F.2d 13 (3d Cir. 1974), *Vaughn v. Chrysler*, 382 F.Supp. 143 (E.D. Mich.1974) (J. Kaess); *McGarvey v. Merck & Company*, 359 F.Supp. 525 (D.N.J.1973) vacated without opinion 493 F.2d 1401 (3d Cir. 1974) (presumably on the same ground that the *Goger* case vacated a dismissal); *Graham v. Chrysler Corporation*, Civ.No. 6–70125, E.D.Mich., March 19, 1976 (J. DeMascio). *Contra*, see *Bertsch v. Ford Motor Company*, 415 F.Supp. 619, E.D.Mich., 1976 (J. Pratt).

These decisions generally base their conclusions that filing with a State agency is required on the similarity of the language of section 633(b) to the parallel provision of Title VII, set out above, which has been held to require filing with a State agency, if one exists, as a prerequisite to suit, and upon the reasoning that to permit commencement of an action without the filing of a State agency complaint would create a loophole:

[T]o construe the statute as plaintiff suggests would create a 'loophole' in Section 633(b) which flies in the face of congressional intent. . . . [A]ny plaintiff could easily by-pass state agencies by waiting, for whatever reasons, until after the state Statute of Limitations had expired before commencing suit in a federal forum. Congress clearly did not intend to permit such an avoidance of primary state remedies where they exist, under the civil rights act of 1964. [citation omitted] There is no evidence in the legislative history of Age Discrimination in Employment Act that Congress intended a different result in 1967. Section 633(b) should be construed to mean that plaintiff must first attempt to utilize available state remedies before filing a complaint alleging discrimination based upon age.

*McGarvey v. Merck & Co.*, 359 F.Supp. 525, 527–28 (D.N.J.1973) *vacated without opinion*, 493 F.2d 1401 (3d Cir. 1974), *cert. denied*, 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1975).

Those cases which have required application to the State before commencing suit have a distinguishable feature in that the plaintiffs in those cases never applied to a State agency. Plaintiff's fault here is that he applied, but about a week too late. The Third Circuit vacated orders of dismissal in *Goger*, and, presumably, *McGarvey*, because there had been no prior case law indicating the existence of such a requirement. In *Vaughn*, the failure to file with the State was clearly an alternative ground since plaintiff had not filed with the Secretary of Labor either.

One case reaching a contrary result, is *Skoglund v. Singer Company*, 403 F.Supp. 797 (D.N.H.1975). *Skoglund* was factually close to the instant case in that an untimely complaint (one month after the six-month

limitation period) was filed with the State agency. The court in that case relied on two Title VII cases that had held that the State filing requirements were not technically "jurisdictional" but were rather in the nature of conditions precedent. The *Skoglund* Court concluded:

> I find that, although Section 633(b) requires timely resort to state remedies before a complaint may be filed in federal court, this requirement is not jurisdictional; therefore, plaintiff's failure to notify the Massachusetts Commission Against Discrimination in a timely fashion does not bar him from this court.

The effect of treating untimely filings as sufficient compliance with State requirements is, of course, to extend the possible period for bringing action in those states to 300 days, an anomalous result.

The Sixth Circuit has not spoken definitely as to how the provisions of the age discrimination statute should be interpreted, since it has not dealt directly with the question of the necessity of State agency filings. See *Rucker v. Great Scott Supermarkets*, 528 F.2d 393, 394 (6th Cir. 1976). However, in discussing the necessity of filing with the Secretary of Labor, it has said:

> This Court, in *Hiscott v. General Electric Co.*, 6 Cir., 521 F.2d 632 . . . following a review of the Act's legislative history, concluded that compliance with the notice requirements contained in § 626 is a jurisdictional prerequisite to the filing of an action under ADEA.

*Eklund v. Lubrizol Corporation*, 529 F.2d 247, 249 (6th Cir. 1976). On the other hand, in another case, it qualified the rule:

> Appellant's failure to afford the Secretary sixty days' notice of his intent to sue requires this Court to affirm the dismissal of Appellant's action unless the special facts of the case warrant the granting of equitable relief.

*Rucker v. Great Scott Supermarkets*, 528 F.2d 393, 395 (6th Cir. 1976).

Applying the literal language of the statute and its logical interpretation, i. e., the requirement that

> "no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State",

means proceedings which were commenced timely under State law also results in unequal periods during which actions may be brought under the federal statute, depending upon the particular state in which the claimant is employed.

A plaintiff in Michigan, which has enacted a law giving him rights that he would not have in, for example, Ohio, is forced to comply with more stringent procedural requirements than a comparable Ohio plaintiff in order to pursue his federal statutory rights. The Ohio plaintiff can sue in federal court by filing a complaint with the Secretary of Labor within 180 days; however, the Michigan plaintiff must file with the State agency within 90 days or be barred from his federal court remedies.

It is this situation which prompted the conclusion of The Honorable Philip Pratt in *Bertsch v. Ford Motor Company*, 415 F.Supp. 619, E.D.Mich., 1976. Although recognizing that "Therefore, it is fair to infer that state procedures, including limitations periods, were intended to be incorporated into the exhaustion requirement of § 633(b)", he concluded

> . . . it is a fair presumption that Congress did not intend that those state practices which differ substantially from the federal, such as a 90 day limitations period, be afforded unchecked deference. Consideration of all of the relevant policies prompts this Court to conclude that Congress intended that state limitations periods be fully operative to the extent that their operation is fair, feasible, and practicable. That is, when they do not unduly interfere with the assertion of the federal right, they must be enforced. When, however, they are substantially shorter than the federal period, compliance should not be an automatic and mandatory pre-condition to suit. Rather, timely resort should generally be required. Certainly, it should be necessary if one seeks to secure the benefit of the

longer 300-day federal filing period. However, where, as here, the failure to timely exhaust is only a function of lack of knowledge and the state refuses jurisdiction, a claimant should be afforded the benefit of the shorter 180 day federal period allotted by Congress as the time "reasonably required . . . to prepare and file a claim." (*Davis* [*Davis v. Valley Distributing Co.*, 9 Cir., 522 F.2d 827], *supra*, at 827). If he properly files a notice of intent to sue with the Secretary of Labor within that time, the civil action may proceed.

The 180-day limitation is carried forward in order to avoid deliberate by-pass or enlarge the time where a claimant has failed to comply with the state procedures. Although this Court, were it enacting such legislation, would concur with the desirability of the result reached by this Court's colleague, it is unable to interpret the statute in this fashion. That Congress was aware that state procedures might be more restrictive than it intended is shown by the express provision that should commencement of state proceedings require more than "a written and signed statement of facts" a state proceeding would be "deemed commenced" with that simple requirement. It flies in the face of reason to conclude that Congress intended state proceedings might be commenced at any time the claimant selected, rather than the period set by the state statute. It should be noted that Title VII until its 1972 amendment had a 90-day limitation period. Thus, apparently Congress was not concerned that such a period was too short a time for the filing of a complaint when it adopted the Age Discrimination in Employment Act in 1967.

The legislative history of the Age Discrimination in Employment Act does not conclusively settle the question of whether an employee who attempts to file with the state agency, but not within the time provided to do so under state law, is barred from bringing a federal court action under the Act. A number of items in the hearings' reports and debates are helpful, however.

First, it must be realized that none of the provisions regarding the requirements of seeking redress from administrative agencies were contained in the original bills, S. 830 and H.R. 4221. In the Civil Rights Act of 1964, Congress had directed the Secretary of Labor to make a study of the problem of Age Discrimination in Employment. See House Report No. 805, 90th Cong., 1st Sess., Oct. 23, 1967. [House Report]. 1967 *U.S.Code Cong. & Admin.News* pp. 2213, 2214. [House Report].

Following the completion of the Report, the Congress directed the Secretary to formulate and submit specific legislative proposals. 1967 *U.S.Code Cong. & Admin. News* at p. 2214. These recommendations took the form of S. 830 and H.R. 4221, 90th Congress, 1st Session.

These bills contained an enforcement mechanism that was very similar to the NLRB procedure used in enforcing the National Labor Relations Act. A new agency would have been empowered to conduct hearings, make findings, and seek enforcement in the Court of Appeals. Individual employees would not have been authorized to bring civil actions by those bills.

The section of the bills that corresponds to the present section 633, dealing with "Federal-State relations," provided only that, "Nothing in this Act shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age." H.R. 4221, section 14.

Both the House and Senate committees added the language that is the present section 633(b). There was very little discussion in the hearings (and none in the reports or the debate) of why this was done. There are two marginally relevant portions of the Senate hearing. First, Mr. Andrew Biemiller, the legislative director of the AFL–CIO, commented during the Senate hearings:

Senator Fannin: Would you like to comment or give your thoughts as to what should be done as far as any preemption is concerned?

M. Biemiller: We are frankly a little disturbed by the section in the bill that is now before you which is designed to negative [sic] Federal preemption in this field. I think it could lead to great confusion, because if I read it properly, you are virtually leaving the State laws unhampered in their respective jurisdictions.

It would seem to me it would be a far more practical and preferable solution if you would take the pattern that was developed by Senator Dirksen and Senator Humphrey, working in concert, in connection with Title VII of the Civil Rights Act of 1964, creating the Equal Employment Opportunities Commission. There as I recall, when you have a State law that is substantially in agreement with the Federal law a matter of 60 days is given to the State fair employment agency to try to solve the problem.

At the end of that time, if the matter is not resolved the case is moved to the Federal agency. I think this would be preferable to trying to say that, where there is a State law, the State agency shall have full and complete jurisdiction.

Hearings before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare on S. 830 & S. 788, 90th Congress, 1st Sess.1967, at 102 [Senate hearings].

A tangential comment was made by Edward Conway of the New York Commission on Human Rights:

It is of particular importance that careful attention be given to the Federal-State relationship which will arise from the enactment of Federal legislation in the field of human rights where existing State legislation has been administered successfully over a period of years. This factor was taken into account by the Congress upon its consideration and enactment of the Civil Rights Act of 1964.

The experience under those provisions would appear to confirm the need for avoiding any implications of preemption of the field under the Federal statute. This requires a clear and specific saving clause which will not only save the juris-

diction of the State agencies, but will avoid to the greatest extent possible the coming into being of unnecessary duplications of effort.

Senate hearings, at 233–234.

As indicated above, the committees added section 633(b) in language very similar to that of the corresponding provision of Title VII, without noting the reason for the addition. The conclusion seems inescapable that the section was patterned after Title VII.

There are also a few comments which attempt to distinguish the procedures of the age discrimination act from Title VII. However, these comments seem directed at allaying fears that the administration of the two acts would interfere with each other. See, e. g., 113 Cong.Rec. 31255 (1967) (Sen. Javits):

The last question raised by the Senator from Colorado [Mr. Dominick], and which I also think we should take account of, is the question of any conflict which might develop in the administration of the law as related also to the Civil Rights Act of 1964, which has some provisions in it with respect to discrimination in employment, or employment opportunity on grounds of race or color.

I do not think this presents any particular problem. The Civil Rights Act of 1964 does not cover age discrimination, and S. 830 does not cover racial or religious discrimination. The laws will operate completely independently of each other, as will the enforcement procedures.

It is quite consistent to conclude that the two provisions will be enforced independently and that parallel enforcement provisions will nonetheless be employed.

The language of section 626(d), relating to the 180-day period for filing with the Secretary of Labor (and 300 days if the State has an enforcement agency) was added on the suggestion of Senator Javits, as part of a more general revision of the enforcement provisions. See 113 Cong.Rec. 35055 (1967). The thrust of the change was to make the basic enforcement provisions like those of the Fair Labor Standards Act,

rather than the NLRB-type enforcement mechanism. Senate hearings at 24–25, 26, 113, 221.

There is no discussion of the reason for the 180-period within which complaints must be filed with the Secretary of Labor; however, there are a number of comments about the reason for the change to the FLSA system generally.

Secretary of Labor Wirtz, the chief administration spokesman in the hearings explained the differences as follows:

[under the administration bill] there would be involved in a particular case, first, of course, the persuasion procedures, which I don't mean to pass over lightly because experience indicates that is where most of these matters would be worked out. If they could not be worked out that way, there would be the institution of an administrative proceeding by the Secretary of Labor against the employer . . . .. The Secretary would attempt to get back pay, reinstatement only or reinstatement with back pay.

If a satisfactory settlement did not result, there would be the institution of proceedings in court in order to enforce the administrative decision. The procedure in court would parallel the procedure under the National Labor Relations Act.

In a Fair Labor Standards Act proceeding you have a situation in which you must move more immediately into the court and depend more fully on the court proceeding. There is also authority under FLSA procedure for a private suit to be instituted by an aggrieved employee.

Hearings on H.R. 4221 before the Subcommittee on Labor of the House Education and Labor Committee, 90th Cong., 1st Sess. 1967 at 14–15.

Senator Javits maintained that his proposal would be superior because it would utilize an existing agency, rather than create a new one. Senate hearings at 27.

A representative of the United States Chamber of Commerce preferred the Javits version because it would lead to greater use of the courts which he felt would be fairer and generally more satisfactory to those involved in disputes. Senate hearings, at 113.

All of this would be far more helpful if the Fair Labor Standards Act had provisions requiring filing of complaints with an agency before an individual could institute a suit.

However, it is clear that Senator Javits thought that resort to the federal agency, at least, was required: "The method of enforcement almost exactly parallels that used in minimum wage and hour cases—that is direct action in the District Court by the Secretary of Labor or the employee for appropriate relief. Such action may only be commenced after informal methods of conciliation have been exhausted." (Senate hearings at 24–25).

One court has relied on a statement of Secretary Wirtz to support the conclusion that the purpose of the Federal-State relations section was to allow states to impose more strict prohibitions against age discrimination than were contained in the federal statute. *Goger v. H. K. Porter Company,* 492 F.2d 13, 18 (3d Cir. 1974) (concurring opinion). However, this is a questionable interpretation of the statement. Secretary Wirtz was asked the following question (in writing) by Senator Javits:

Does the preservation of the jurisdiction of State agencies in Sec. 14 allow State agencies to impose prohibitions against age discrimination and employment stricter than those provided under Federal law?

Secretary Wirtz answered "Yes." Senate hearings at 48. That the provision would *allow* a certain result does not mean that its purpose was to produce that result.

There is no doubt that Congress was aware of the existence of age discrimination laws in about one-half of the states. See House Report, at 2215. There is less certainty that Congress knew of the time periods within which complaints to state agencies were required to be filed. At least four states had, at that time, statutes that required filing of complaints within time periods shorter than the 180 days provided

for filing with the Secretary of Labor under the federal statute: Connecticut: Conn. Gen.Stat.Ann. § 31–127 (90 days); Hawaii: Haw.Laws, 1963 ch. 80 Sec. 3 (90 days); Indiana: Burns Ind.Stat. § 40–2323 (agency complaint against employer required to be filed within four months of discriminatory practice—any employee complaint would necessarily precede agency action); Michigan: 1965 P.A. No. 344 (incorporating 90-day period in general employment discrimination enforcement section) (the Michigan statute was later held to have been unconstitutional by the State courts. *Hudak v. Ex-Cell-O Corp.*, 58 Mich.App. 135, 227 N.W.2d 251 (1975), the present statute was enacted in 1972).

The reports, hearings and debates do not comment on these provisions; however, the provisions of the Hawaii and Indiana statute, including the 90-day requirement of filing, are printed in the House and Senate hearings as part of material submitted to the committees by several associations composed of insurance agents and/or companies. See House Hearings at 500–518 (especially 502–512); Senate Hearings at 298–316. There is no reason to infer Congress was not fully aware of matters presented to it and printed in its hearings.

■ The clear mandate of the statutory language, that "no action may be commenced by an individual" unless the requirements of 626(d) and by incorporation therein 633(b) are complied with bars the plaintiff from bringing this action under the Age Discrimination in Employment Act. His action insofar as it is based on that statute is DISMISSED WITH PREJUDICE. The balance of his claim is DISMISSED WITHOUT PREJUDICE.[2]

---

2. The Court wishes to make it clear that it is not passing on the question of whether plaintiff has stated a claim under State law as enunciat-ed in *Pompey v. General Motors Corp.*, 385 Mich. 537, 189 N.W.2d 243 (1971) or has stated a claim for breach of an employment contract.