Charles D. REICH, Plaintiff-Appellant,

v.

DOW BADISCHE COMPANY and Dow
Chemical Company,
Defendants-Appellees.

No. 931, Docket 76–7637.

United States Court of Appeals,
Second Circuit.

Argued May 23, 1977.

Decided April 4, 1978.

Lewis F. Tesser, New York City (Coles Weiner Tesser, P.C., New York City, of counsel), for plaintiff-appellant.

Steven J. Glassman, New York City (Kaye, Scholer, Fierman, Hays & Handler and Mark Landau, New York City, of counsel), for defendants-appellees.

Before FEINBERG and DANAHER,* Circuit Judges, and DOOLING,** District Judge.

DOOLING, District Judge.

Appellant was employed by appellee Dow Chemical Company in October 1965 when he was fifty years old. He worked in a sales capacity for appellee Dow Badische Company, 50% of the stock of which is owned by Dow Chemical Company, until on or about June 29, 1973, when he was discharged. Since he had not worked for Dow for ten years, appellant had no vested right to a retirement pension under the Dow Retirement Plan. On June 29, 1976, plaintiff commenced the present suit alleging that his discharge was based on his age and discriminated against him and in favor of younger and less experienced sales persons; appellant alleged generally that he had sought relief unavailingly through various state and federal channels, and had notified the Solicitor of Labor more than sixty days before suing of his intention to sue privately. Appellant gave written notice to the Secretary of Labor of his intention to file suit on February 11 and March 2, 1976. See 29 U.S.C. §§ 626(c, d), 633(b), 255(a).

Appellant's answers to interrogatories and his document production assert that appellant "contacted" the New York State Division of Human Rights by telephone in December 1973 and May 1974 and filed a verified complaint against appellees with the Division, Region 1a, on June 24, 1976, and that there was no written response, or record of any oral response, from the state agency. Appellant did not say that he had given the Secretary of Labor written notice of his intention to sue earlier than 1976, but appellant asserted that in December 1973 [1] he spoke to Norman Bromberg, the Acting Area Director, Employment Standards Administration, Wage and Hour Division, Department of Labor, about his difficulties in retaining a lawyer, asked for a recommendation of counsel, which was declined, and then

> "I told him I would sue when I could find a lawyer."

Bromberg wrote appellant on December 11, 1973, acknowledging the receipt from appellant of information about appellees' practices, saying that the matter had been assigned to a compliance officer, and concluded:

> "A pamphlet summarizing the provisions of the Act is enclosed for your information. As you will note on page 4, there are certain requirements with specific time limits governing the circumstances under which an employee may file his own suit under this Act."

Under date of April 2, 1974, the Area Director wrote appellant that there would be a delay in completing the investigation, and continued

> "In view of this delay and to avoid any misunderstanding, your attention is again

* Of the District of Columbia Circuit, sitting by designation.

** Of the Eastern District of New York, sitting by designation.

1. Appellant's affidavit states that in December 1973 he "had much the same experience and conversation with Mr. Leo Friedman of the U.S. Department of Labor" that he had with Bromberg (JA 27). This appears to be a mistaken reference to a meeting of December 3, 1974, between appellant and Friedman, referred to in Friedman's letter to appellant of January 23, 1975 (JA 54).

called to page 4 of the enclosed pamphlet. As you will note, there are certain requirements with specific time limits governing the circumstances under which an employee may file his own suit. The fact that you submitted information concerning an alleged unlawful practice has not been considered a notice to the Secretary of Labor of intent to file suit. We do not, of course, encourage or discourage such suits. This is entirely up to you."

Another letter in the same tenor was sent appellant by the Area Director on August 13, 1974. By letter of January 23, 1975, the office of the Assistant Regional Director informed appellant that the solicitor's office had advised that there was "no basis for litigation by the Department of Labor in your behalf." A conciliation effort on appellant's behalf was, nevertheless, made by the Richmond Area Office of the Department in April-May 1976, without success.

So far as concerns the State Division of Human Rights, appellant's affidavit in opposition to the motion for summary judgment stated that he spoke on the telephone (*semble* in August 1973) to an unidentified person in the Division of Human Rights, who told him that, since appellees' home office was out of state and the matter seemed "appropriate for federal relief of some sort", the case would doubtless "end up with the U.S. Department of Labor", and appellant "should go to them to begin with." Appellant refers to two further telephone calls to the Division of Human Rights in December 1973 and May 1974, "the results of which were negative and in each case I was discouraged from coming down to file any complaint." (It appears that the Division of Human Rights on April 6, 1977, dismissed appellant's complaint and closed the file on the ground that the complaint to the Division had not been filed within one year after the discrimination complained of occurred, as required by Section 297(5) of the New York Executive Law. See Executive Law § 297(1), (5); *Matter of Queensborough Community College v. State Human Rights Appeal Board,* 1977, 41 N.Y.2d 926, 394 N.Y.S.2d 625, 363 N.E.2d 349.)

Appellant contends that he had been from the inception of his complaint to the Secretary of Labor in 1973 until the filing of the complaints with the State Human Rights Division and with the district court in June 1976 "continuously engaged in attempts to secure competent counsel to represent me privately, which efforts were well known to the U.S. Department of Labor." Appellant's affidavit detailed contacts with some eleven different lawyers or law firms commencing July 18, 1973, and continuing on April 4, 1974, October 18, 1974, January or February 1975, March 11, 1975, March 1975, April 17 and 18, 1975, April 23, 1975, May 2, 1975, and late spring 1976.

Appellees moved to dismiss, or for summary judgment, on the complaint and appellants answers to the interrogatories. Judge Wyatt decided that

> "The requirements of 29 U.S.C. § 626(d) are jurisdictional and notice of intent to sue was not given in the required time . . . . The motion has been treated as one for summary judgment and is granted."

Appellant contends that the district court erred in holding by summary judgment that the required notice had not been given within the required time inasmuch as appellant "clearly asserted, in his affidavit in opposition . . . that he provided the requisite notice." His argument is that his oral statement that he would sue when he could find a lawyer satisfied the requirement of Section 626(d) (*Woodford v. Kinney Shoe Corporation,* N.D.Ga.1973, 369 F.Supp. 911, 914–915; *Sutherland v. SKF Industries, Inc.,* E.D.Pa.1976, 419 F.Supp. 610, 615–616), that his notice of intent to sue did not have to be in any particular form (*cf. Burgett v. Cudahy Company,* D.Kan.1973, 361 F.Supp. 617, 619, 621), and, in any event, appellant should have been given an opportunity at trial to show circumstances that might operate to cure any defect in filing his notice of intention to sue.

Appellees contend that Section 626(d) plainly bars appellant's claims because his

alleged December 1973 notice of intention to sue was not in writing (*Hays v. Republic Steel Corp.*, 5th Cir. 1976, 531 F.2d 1307, 1312); the written notices filed in 1976 were ineffective because filing the notices within the time prescribed in Section 626(d) was a condition precedent to successful suit in the district court (*Hiscott v. General Electric Co.*, 6th Cir. 1975, 521 F.2d 632; *Adams v. Federal Signal Corp.*, 5th Cir. 1977, 559 F.2d 433), and appellant made no showing of entitlement to equitable relief from the statutory bar. *Cf. Powell v. Southwestern Bell Telephone Co.*, 5th Cir. 1974, 494 F.2d 485; *Ott v. Midland-Ross Corp.*, 6th Cir. 1975, 523 F.2d 1367, 1370; *Dartt v. Shell Oil Co.*, 10th Cir. 1976, 539 F.2d 1256, 1261–1262, aff'd by equally divided Court, 1977, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270. Appellees contend, further, that appellant is barred because he did not file a timely complaint with the State Human Rights Division, as required by 29 U.S.C. § 633(b). *Goger v. H. K. Porter Co.*, 3d Cir. 1974, 492 F.2d 13, 15–16; *Curry v. Continental Airlines*, 9th Cir. 1975, 513 F.2d 691, 693; *Davis v. RJR Foods, Inc.*, S.D.N.Y.1976, 420 F.Supp. 930, 933, aff'd, 2d Cir. 1977, 556 F.2d 555; *cf. Weise v. Syracuse University*, 2d Cir. 1975, 522 F.2d 397, 411–412. Petitioner argues, in reply, that the deference to state remedies required by

Section 633(b) is not "jurisdictional" (*i. e.*, preclusive), *Skogulund v. Singer Co.*, D.N.H. 1975, 403 F.Supp. 797, 802–803; *cf. Goger v. H. K. Porter Co., supra, Rogers v. Exxon Corp.*, 3rd Cir. 1977, 550 F.2d 834, 844; *Bonham v. Dresser Industries, Inc.*, 3rd Cir. 1977, 569 F.2d 187, and appellant should be given an opportunity to produce evidence that his failure to pursue his state remedy can be excused.[2]

The Age Discrimination in Employment Act ("ADEA"), in these respects not unlike Title VII of the Civil Rights Act of 1964, dealing with equal employment opportunity (42 U.S.C § 2000e–5(b), (c), (e) and (f)(1)), does not permit a grievant to sue until sixty days after he has presented his charge of discrimination to the appropriate state authority.[3] Section 626(d)[4] further requires that before suing the grievant must in every case file with the Secretary of Labor notice of his intention to sue for redress of the discrimination sixty days before he sues. While the ADEA creates a distinct substantive right in employees engaged in industries affecting commerce (Section 623), the right to sue upon it is thus doubly qualified.

Failure to meet the sixty day notice requirements of Sections 626(d) and 633(b) —and on a literal reading of the ADEA, the two notice periods could run concurrently—

---

**2.** If appellant had waited the statutory period of 60 days after filing his state June 1976 complaint with the Human Rights Division, his federal suit would have been barred by the three year statute of limitations. 29 U.S.C. §§ 626(e), 255(a).

**3.** The language of Section 633(b) is patterned on that 42 U.S.C. § 2000e–5(c). The relevant portion reads,

> "In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated . . . ."

**4.** Section 626(d) provides both for the giving of the sixty day notice and requires that it be

given with a certain time after the discrimination occurred. The text is:

> "No civil action may be commenced by any individual under this section until the individual has given the Secretary not less' than sixty days' notice of an intent to file such action. Such notice shall be filed—
>
> (1) within one hundred and eighty days after the alleged unlawful practice occurred, or
>
> (2) in a case to which section 633(b) of this title applies, within three hundred days after the alleged unlawful practice occurred or within thirty days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.
>
> Upon receiving a notice of intent to sue, the Secretary shall promptly notify all persons named therein as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion."

does not extinguish the employee's substantive right; it does terminate the individual's right to commence a private civil action in his own name, but the Secretary retains the right to sue to enforce the grievant's rights wholly without reference to the notice requirements. *Dunlop v. Crown Cork & Seal Co.,* D.Md.1976, 405 F.Supp. 774; 29 U.S.C. §§ 626(b), 216(c). The Secretary's right to sue continues until the expiration of the statute of limitations, that is, for two years at least, or, in the case of a willful violation, for three years. 29 U.S.C. §§ 626(e), 255(a).

The notice requirements reflect the Congressional purpose to achieve remediation primarily by conciliation managed through the Department of Labor or through the appropriate state agency, if there is one, or both. ". . . [P]rivate lawsuits are secondary to administrative remedies and suits brought by the Secretary of Labor." *Rogers v. Exxon Research Engineering Co., supra,* 550 F.2d at 841. See *Dean v. American Sec. Ins. Co.,* 5th Cir. 1977, 559 F.2d 1036, 1038. When notice is given to the Secretary, the ADEA imposes on him the duty promptly to "seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion", and he may institute suit to eliminate the discrimination. See, e. g., *Marshall v. Goodyear Tire & Rubber Co.,* 5th Cir. 1977, 554 F.2d 730; *Brennan v. Ace Hardware Corp.,* 8th Cir. 1974, 495 F.2d 368; *Hodgson v. Greyhound Lines, Inc.,* 7th Cir. 1974, 499 F.2d 859; *Usery v. Tamiami Trail Tours, Inc.,* 5th Cir. 1976, 531 F.2d 224. Even when a timely private suit is commenced after the giving of timely notice of intent to sue, a suit by the Secretary supersedes the private suit. 29 U.S.C. § 626(c).

Appellant relies on the oral statement that he would sue when he could find a lawyer, allegedly made in December 1973, to satisfy the requirement of Section 626(d). The notice allegedly given was ill-calculated to discharge the statutory function of presenting the Secretary with an unequivocal notice that the grievant intended to sue, and that, in consequence, he must under the statute

"promptly notify all persons named [in the notice of intent] as prospective defendants in the action".

Appellant's alleged oral notice had neither the content nor the clarity of expressed purpose needed to fulfill its statutory office. If so uncertain a notice could be thought sufficient, the result could often be obscure protractions and confusion in proceedings that are intended to be quickly prosecuted, while restoration to employment with minimal derangement of the affairs of employer and employee can still be seen as possible. *Cf. Dartt v. Shell Oil Co., supra,* 539 F.2d at 1259; *Powell v. Southwestern Bell Telephone Co., supra,* 494 F.2d at 489.

The statute does not say that the notice of an intent to file an action must be written, but Section 626(d), by requiring that it be filed, implies that the notice must be written. *Hays v. Republic Steel Corp., supra; cf. Charlier v. S. C. Johnson & Son, Inc.,* 5th Cir. 1977, 556 F.2d 761, 764–765. *Hays* did not discuss or cite *Woodford v. Kinney Shoe Corp., supra,* but both *Hughes v. Beaunit Corp.,* E.D.Tenn.1976, 12 EPD ¶ 11,092, and *Berry v. Crocker National Bank,* N.D.Cal.1976, 13 EPD ¶ 11,377 at p. 6252 noted and rejected the *Woodford* case in holding that oral notices were insufficient. The district court in *Dartt v. Shell Oil Co.,* N.D.Okla.1975, 9 EPD ¶ 10,205 at p. 7913, rejected *Woodford*; on appeal *Woodford* was cited with evident approval, but for its emphasis upon interpreting the ADEA as a statute meant to apply to laymen who may often lack legal guidance at the critical times (539 F.2d at 1260–1261). There is no policy basis for denying the statutory language its evident meaning. The statute is indeed beneficent, but it enacts its own beneficence on its own terms, and those terms are best adhered to, for they are related to the statutory purpose of seeking prompt relief. While the tax cases interpreting what is now 26 U.S.C. § 6511, requiring a claim for refund of tax be "filed" within certain time periods, involve other and more complex considerations,

they are clear that, although a claim for refund may be informal, it must be a written claim. *Benenson v. United States,* S.D. N.Y.1966, 257 F.Supp. 101, 108, aff'd, 2d Cir. 1967, 385 F.2d 26; *Barenfeld v. United States,* 1971, 442 F.2d 371, 375, 194 Ct.Cl. 903; *American Radiator & Standard Sanitary Corp. v. United States,* 1963, 318 F.2d 915, 920, 162 Ct.Cl. 106; *Ritter v. United States,* 3rd Cir. 1928, 28 F.2d 265, 267. The same conclusion was reached with respect to "filing" claims against New York City: the filing requirement implies a written claim. *Foley v. Mayor,* 1st Dept. 1896, 1 App.Div. 586, 37 N.Y.S. 465.

■ No circumstances excuse appellant's failure to comply with the notice-to-sue requirement of Section 626(d).[5] It is not contended that the Department of Labor representatives indicated to appellant that his alleged oral notice of intent to sue sufficed. On the contrary, the letter of December 13, 1973, apprised him that he had time limits to meet if he meant to sue. On that date appellant had ample time to file a state complaint and be secure in the fact that he had three hundred days from June 29, 1973 to file his notice to sue. That notice he still had time to file on April 4, 1974, when he was for the second time reminded by the Department of Labor representative of the time limitations, and even at that date, he had time as well to file his state complaint. Even if there were cases in which a clear oral notice could satisfy the requirement of Section 626(d), the present case is not one, for the Department of Labor told appellant that what he had submitted was not considered a notice of intent to file suit. That

advice was given when time still remained. Appellant's Section 626(d) notice was out of time, and he has presented nothing entitling him to relief against his default.[6] *Cf. Hays v. Republic Steel Corp., supra,* 531 F.2d at 1312; *Hiscott v. General Electric Co., supra; Powell v. Southwestern Bell Telephone Co., supra.* Contrast: *Dartt v. Shell Oil Co., supra,* 539 F.2d at 1261–1262; *Ott v. Midland-Ross Corp., supra.*

Appellees advanced in the district court the further contention that appellant failed to comply with the requirement of Section 633(d) within the three hundred day period fixed by Section 626(d)(2).[7] Appellant did not file any complaint with the State Human Rights Division until nearly three years after the occurrence of the alleged discrimination, and filed it not sixty days but five days before he commenced the present action.

■ "Deference" to state procedures where they exist is fundamental to the ADEA structure. The ADEA itself plainly asserts federal supremacy in the field of its operation when the federal remedy is invoked, but equally it insists on resort to the state procedure as a condition precedent to federal suit. The reason is plain enough. When Congress acted in 1967, the House Report on the bill that became law (H.R. Rep.No.805, 90th Cong., 1st Sess., *reprinted in* [1967] 2 U.S.Code Cong. & Admin.News pp. 2213, 2215) observed that

"There are now 24 States which have age discrimination legislation of the type proposed in H.R. 13054. Over the years other State legislatures have passed reso-

---

**5.** Appellant instituted suit by filing his complaint on June 29, 1976, exactly three years after the date "on or about" which appellant in paragraph 10 of the complaint alleged that appellee Dow Badische "wilfully discharged" him. The date pencilled at the top of appellant's typewritten letter to appellee Dow Chemical protesting his discharge "this afternoon" is June 25, 1973 (JA 45) but the verified complaint received by the State Human Rights Division on June 24, 1976, states that appellant was fired "on June 29, 1973." (JA 40)

**6.** The Regional Solicitor's Memorandum of January 7, 1975, reflected an investigation of the

facts leading to the opinion that the information supported the conclusion that there was no factual basis for the allegation that appellant had been terminated due to his age or that age played any part in the decision (JA 55–57).

**7.** The contention was not passed on by the district court, but it may be properly urged by appellees in this court in support of the judgment below. *Dandridge v. Williams,* 1970, 397 U.S. 471, 475, 90 S.Ct. 1153, 25 L.Ed.2d 491; *Fusari v. Steinberg,* 1975, 419 U.S. 379, 387, 95 S.Ct. 533, 42 L.Ed.2d 521 (and fn. 13).

lutions declaring age discrimination to be against public policy."

The New York law against discrimination was extended to cover discrimination against age in employment by Section 2 of the Laws of 1958, Chapter 738. See Executive Law § 296(3–a). The State Human Rights Law, which includes the age discrimination provisions, forms Article 15 of the Executive Law. It requires grievants to file with the Division of Human Rights a verified complaint in writing (Section 297(1)), and requires the Division promptly to serve a copy of it on the respondent and to make prompt investigation; it authorizes the division to attempt conciliation, requires it to conduct hearings and render decisions, and empowers it to enforce its orders through action in the state supreme court. (See Section 297). The law requires complaints to be filed within one year after the alleged discriminatory practice (Section 297(5)), and that provision is regarded as mandatory. *State Division of Human Rights v. Westmoreland Central School District,* 4th Dept. 1977, 56 App.Div.2d 205, 207–208, 392 N.Y.S.2d 149, 151; *cf. Matter of Stacy v. McDaniel,* 1st Dept. 1976, 54 App.Div.2d 645, 387 N.Y.S.2d 631. Unlike the ADEA the State Human Rights Law permits a grievant to elect to forego complaint to the Division and instead to sue upon the statutory cause of action "in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate." Section 297(9); *Moran v. Simpson,* Sup.Ct.1974, 80 Misc.2d 437, 362 N.Y.S.2d 666.

Appellant's failure to comply with Section 633(b) is a bar to maintenance of the action. The cases relied on by appellant do not hold that resort to state procedure is not required by the ADEA; all agree that proof of that resort is necessary to make out the grievant's case under the ADEA. *Hadfield v. Mitre Corp.,* 1st Cir. 1977, 562 F.2d 84; see *Rogers v. Exxon Research & Engineering Co., supra,* 550 F.2d at 844–845; *Curry v. Continental Airlines, supra,* 513 F.2d at 693; *Goger v. H. K. Porter Co., supra,* 492 F.2d at 15–16; *Bonham v. Dresser Industries, Inc., supra,* 569

F.2d at p. 195; *cf. Equal Employment Opportunity Commission v. Union Bank,* 9th Cir. 1969, 408 F.2d 867; *Smith v. American President Lines, Ltd.,* 2d Cir. 1978, 571 F.2d 102. Cases have, indeed, granted relief against noncompliance where circumstances have been presented that indicate that the interests of justice require that equitable relief. But appellant makes out no claim entitling him to such relief. Appellant made no reference to any circumstance explaining his delayed filing in the complaint he ultimately filed with the state Division of Human Rights (*cf. Matter of Stacy v. McDaniel, supra*). The statements in his affidavit in the district court—that an unidentified person at the Division told him on the telephone that his "matter seemed to be appropriate for federal relief" and that he "should go to them to begin with," and that two further telephone calls to unidentified persons at the Division had "negative" results and "in each case I was discouraged from coming down to file any complaint"— these statements of three telephone contacts within the year allowed for filing a state complaint are too insubstantial to found a claim to equitable relief against the time bar.

Much of appellant's argument mistakenly proceeds on the tacit premise that resort to the state remedy is a technical step devoid of substantive content, and that, therefore, the slightest of showing will warrant setting the bar of Section 633(b) aside. That ignores the paramount circumstances, that the state remedy, or rather remedies, presented appellant with a full and adequate system of relief, that there was no reason for turning to the federal remedy that did not equally direct appellant to the state remedies, and that the scheme of the ADEA very explicitly requires that the grievant timely present his claim to the state authority before suing.

Whatever may have been appellant's reasons for proceeding as he did, he did not satisfy the statutory requirements and summary judgment was properly given in appellees' favor.

The judgment is affirmed.

DANAHER, Senior Circuit Judge, concurring:

I quite agree with Judge Dooling's opinion prepared for the court, with special approval of the array of the facts disclosed by our record. Clearly and adequately the opinion represents the state of the law in this Circuit as I read it, and one might suppose I should say no more. That is especially so since the opinion disposes of the issue before us.

In further support of our instant conclusion, I respectfully submit an alternative approach to control in situations such as here. Comparable claims on a case by case basis will otherwise confront this great court. No judge in this Circuit is lacking in an appreciation of humanitarian impulse, especially with reference to a sympathetic consideration of the possibilities of discrimination against employees on account of the immutable factor of age. Senator Javits, for years, expressed concern in this area as the legislative record demonstrates. Although acutely aware of the plight of an employee who may become the victim of discrimination "solely" because of age—and he so emphasized at page 31255 of the Congressional Record for November 6, 1967—he was not unmindful that employers have rights also. See the reference in *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.,* 515 F.2d 1195, 1198 (CA 5 1975).

The extensive study by the committees of the Congress over a period of years gave rise to the findings to be noted in 29 U.S.C. § 621. In furtherance of the congressional purpose it will be seen that Congress imposed specific duties upon the Secretary of Labor by 29 U.S.C. § 626(c). Rights were conferred upon an allegedly aggrieved individual employee by 29 U.S.C. § 626(d).[1] Where we find that the books are replete with reports of the opinions of the federal courts which, in varying situations, have purported to resolve aspects of disputes in the area under consideration, I think this Circuit should act definitively. If I could persuade my respected colleagues to my approach, I would point for guidance in these situations to the principles announced in *Texas Cement Co. v. McCord,* (1914), 233 U.S. 157, 34 S.Ct. 550, 58 L.Ed. 893, where at 162, 34 S.Ct. at 552, we read:

> The cause of action did not exist before and is the creature of the statute. The act does not place a limitation upon a cause of action theretofore existing, but creates a new one upon the terms named in the statute. The right of action . . . is specifically conditioned upon the fact that no suit shall be brought by the United States within the six months named, for it is only in that event that the creditors shall have a right of action. . . . *The statute thus creates a new liability and gives a special remedy for it, and upon well settled principles the limitations upon such liability become a part of the right conferred and compliance with them is made essential to the assertion and benefit of the liability itself.* (Citations omitted, emphasis supplied).

To me it seems inevitable that Congress expected the Secretary, pursuant to 29 U.S.C. § 626(a), to make investigations, and particularly, to exercise the powers defined in 29 U.S.C. § 211(a). Even respecting the possibility of his bringing an action against an employer, the Secretary was directed to attempt to eliminate discriminatory practices and to effectuate voluntary compliance with the requirements of the Act. Moreover, no civil action was to be commenced by a victim of allegedly discrimina-

---

1. For present purposes, we may paraphrase thus:

    No civil action may be commenced by any *individual* under this section until the *individual* has given the Secretary not less than 60 days' notice of an intent to file such action. Such notice shall be *filed —*

    (1) within one hundred and eighty days after the alleged unlawful practice occurred, or

\* \* \* \* \* \*

Upon receiving [that] notice of intent to sue, the Secretary shall promptly notify all persons named therein as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation. . . .

tory conduct unless that individual shall have filed within 180 days after the practice complained of a notice that the individual intended to file the private civil action which the statute authorized. Such time limitations, so clearly stated, are not and never were intended to be statutes of limitation, as some of the opinions of some of the courts would suggest. Congress was imposing and did impose *preconditions* to the institution of any such civil action.[2] The congressional objective was two-fold, not only in terms of affording the Secretary an opportunity to eliminate the allegedly discriminatory practice but to accord to the employer adequate notice that a failure to eradicate the improper practice could lead to litigation. Such litigation, it could well be seen, might result in a class action with devastating impact upon the employer's business. Such actions, discriminatory in nature on other grounds, have already involved awards of damages in the millions of dollars.

In some of the cases already cited by my able colleagues we find judges—and in many instances district judges acting alone—making their own decisions as to whether or not the "equities" run in favor of the one party—or the other. I suggest that the time periods specified in Section 626(d) are not at all statutes of limitation; rather, statutes of repose are in no sense the equivalent of *preconditions*[3] to the commencement of an action.

Perhaps we now should note that we purposefully had deferred releasing an opinion in the instant case while we awaited Supreme Court consideration of *Dartt v. Shell Oil Company,* 539 F.2d 1256 (CA 10 1976). The *Dartt* court in light of the factual situation there presented found the filing periods not to be "jurisdictional" but to be subject to equitable modifications such as "tolling and estoppel" as sometimes applied to statutes of limitation. To the extent that we anticipated possible guidance from the Supreme Court, our hopes were dissolved when, on November 29, 1977, the Tenth Circuit opinion was affirmed by an equally divided court in *Shell Oil Company v. Dartt,* 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 472 (1977).

But the Court taught us this much, we reasonably may deduce, four justices refused to accept the proposition that the rights of an employee discharged because of "age" were to be determined by some court's appraisal of where the "equities" might be said to lie. Judge Mulligan writing for himself and Judges Friendly and Smith has heretofore considered the possible effect of the Supreme Court's action in the *Dartt* impasse. He recognized in *Smith v. American President Lines, Ltd., et al.,* 571 F.2d 102, 109 (1978), that affirmance in *Dartt* by an equally divided court had prevented the case from becoming an authority for the determination of other cases either in the Supreme Court or in lower courts. Whether the failure to comply with a time limitation in *Title VII cases* is strictly "jurisdictional or is in the nature of a statute of limitations[4] subject to tolling is still open in this circuit and remains so." I venture to suggest that as to Title VII cases we well may take account of *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), where at 47, 94 S.Ct. at 1019 the Court said that the Act there considered had specified "with precision the jurisdictional prerequisites that an individual must satisfy before he is entitled to institute a lawsuit"; see also *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 555, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

---

2. In a not entirely dissimilar connection we find Congress saying no civil action *may be commenced* by any individual under 29 U.S.C. § 633a(d) until the individual has given the Commission not less than 30 days' notice of an intent to file such action. (Emphasis supplied).

3. *Compare* the preconditions spelled out in such detail in *Brown v. GSA,* 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

4. The *Smith* Court observed, note 4, at 108, the primary consideration underlying statutes of limitations is that of fairness to the defendant. The latter should not be called upon to defend a suit when "evidence has been lost, memories have faded and witnesses have disappeared." *Order of R.R. Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944).

We fairly may disregard Title VII cases respecting the point here at issue under ADEA in view of the Court's opinion in *Lorillard v. Pons,* —— U.S. ——, ——, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), where the Court perceived that Congress specifically had refused to adopt the procedures of Title VII for ADEA actions. Definitely, the Court made clear, the Congress in ADEA private actions had incorporated fully the remedies and the procedures of the Federal Labor Standards Act.

There was good reason for the action taken by the Congress. Senator Javits had made abundantly clear that timely action by an allegedly aggrieved victim of discrimination because of age required the expedition contemplated by Section 626(d). He had testified before the Labor Subcommittee on March 15, 1967, that inordinate delays had become the plague of many agencies.

> The EEOC, for example, is already years behind in disposing of its docket. Such delay is always unfortunate, but it is particularly so in the case of older citizens to whom, by definition, relatively few productive years are left. By utilizing the courts rather than a bureaucracy . . . as the forum to hear cases arising under the law, these delays may be largely avoided. 113 Cong.Rec. 7076 (1967).[5]

In support of his amendment, he had aligned with himself various other senators whose assistance he required in amending the proposed Administration bill.

By November 6, 1967, he was able to announce that "to the greatest extent possible the amended S. 830 had incorporated the provisions of the Fair Labor Standards Act." [6]

We may turn to H.R.Rep.No.805, 90th Cong., 1st Sess. 5, reprinted in [1967] U.S. Code Cong. and Admin.News, 2213, where we read an analysis of the bill at page 2223:

> Subsection (d) requires that persons intending to file civil actions under this act *must* give the Secretary of Labor 60 days' notice before doing so. During the 60-day period, the Secretary would seek to eliminate unlawful practices by informal methods of conciliation, conference, and persuasion. (Emphasis supplied).

The very wording indicates that it was not within the contemplation of Congress that victims of discrimination because of age were afforded greater leeway in the commencement of a private civil action to seek relief. The time limits had been chosen with precision and constituted a precondition to litigation. Of course, there remained open to the Secretary the authority to act under the circumstances prescribed in section 626(b). Indeed, even where an individual shall have commenced an action on his own account that action must terminate upon the commencement of an action by the Secretary to enforce the right of that employee. 29 U.S.C. Section 626(c) so provides, as the Court has noted in *Lorillard v. Pons, supra.* Remember we are not here concerned with defenses which may be available but with the exercise of a conferred right in a statute which contains its own limitations. No more are we presently involved with possible remedies where inequities born of our sympathetic consideration may from time to time arise. Preconditions to civil actions created by the Congress, in

---

**5.** In *Johnson v. Railway Express Agency,* 421 U.S. 454 (1975) the Court at 465, note 11, 95 S.Ct. 1716 at 1722, 44 L.Ed.2d 295, said

> We are not unmindful of the significant delays that have attended administrative proceedings in the EEOC.

**6.** It is clear enough that Senator Javits, Senator Yarborough and others of their colleagues whose ideas had been under consideration, had collaborated at hearings and in conferences to work out details of the proposed legislation, S. 830. Not only were the rights of the employees to remain as desirable objectives, but employers as potential defendants had to be considered. Senator Javits explained:

> We now have the enforcement plan which I think is best adapted to carry out this age-discrimination-in-employment ban with the least overanxiety or difficulty on the part of American business, and with complete fairness to the workers. I think that is one of the most important aspects of the bill. 113 Cong.Rec., 31254 (1967).

my view, shall strictly be adhered to by the judiciary.[7]

I have already concurred in Judge Dooling's opinion, not only because of what he has so well written but because my approach[8] includes the thoughts I have respectfully submitted.

FEINBERG, Circuit Judge (dissenting):

The majority concludes that summary judgment was warranted here because appellant failed to comply with two procedural requirements of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 et seq. I respectfully dissent. I would hold, first, that unequivocal oral notice of intent to sue, which has the effect of initiating the Department of Labor's mediation function under the Act, can satisfy section 626(d), and second, that section 633(b) does not, as a matter of law, bar appellant's suit. Accepting appellant's averments as true, summary judgment was improper here, and this case should be remanded for determination of crucial issues of fact, particularly whether sufficient oral notice was actually given.

## I

Reich was fired by defendant Dow in June 1973. In December of that year, within the 180-day period of section 626(d)(1), appellant apparently went to the New York City office of the Department of Labor and told an official there that "I would sue when I could find a lawyer."[1] Shortly thereafter, the official with whom appellant spoke confirmed receipt of information concerning the alleged age discrimination, and indicated that the Department's conciliation function had been initiated. This letter, which was accompanied by an informational pamphlet, also warned appellant that "there are certain requirements with specific time limits governing the circumstances under which an employee may file his own suit under this Act." Four months later, another Department of Labor official from an office in Newark, New Jersey, arguably unaware of appellant's oral notice of intent to sue, sent Reich a second letter specifically informing him that while an investigation of defendant "has been scheduled," Reich's submission of "information concerning an alleged unlawful practice has not been considered a notice to the Secretary of Labor of intent to file suit."

In August 1974, the second official wrote appellant again, this time informing him that conciliation had failed, but that the investigation was continuing. The general warning about the time limits regarding private suits was reiterated, although the second official did not specifically state again that no intent to sue had been received. It is also apparent from this correspondence and from Reich's affidavit that there were ongoing oral communications between him and the Department at this time. Finally, in January 1975, the Department notified Reich that it would not sue on his behalf.

**7.** The principle is definitely an important part in my consideration of the instant problem. While the preconditions, hereinbefore discussed, to the commencement of an action are vital to the prosecution of the suit, Congress has so ordained. Although there are variants in different statutes at one time or other considered by the courts, none has more succinctly stated my view than did the Supreme Court in *Kavanagh v. Noble,* 332 U.S. 535, 68 S.Ct. 235, 92 L.Ed. 150 (1947):

> Such periods are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary . . . *Remedies for resulting inequities are to be provided by Congress, not the courts. Id.* 539, 68 S.Ct. 237. (Emphasis supplied).

**8.** *See, generally, Powell v. Southwestern Bell Telephone Co.,* 494 F.2d 485 (CA 5 1974); *Hiscott v. General Electric Co.,* 521 F.2d 632 (CA 6 1974); *Eklund v. Lubrizol Corp.,* 529 F.2d 247 (CA 6 1976) and *Charlier v. S. C. Johnson & Son, Inc.,* 556 F.2d 761 (CA 5 1977) and cases cited therein.

**1.** Reich's affidavit states that "I spoke with Mr. Norman Bromberg of the . . . Department of Labor, at 26 Federal Plaza, New York, N.Y." It is therefore unclear whether appellant alleges he spoke in person with Mr. Bromberg, or whether he spoke over the phone with Mr. Bromberg, who was at 26 Federal Plaza.

Meanwhile, after an extended search, appellant obtained his present counsel. After sending the Department written notices of intent to sue in February and March 1976, appellant lodged a complaint with the New York State Division of Human Rights [2] and also instituted suit in the federal district court in June 1976. In December 1976, Judge Wyatt granted summary judgment in the federal suit on the sole ground that plaintiff did not give the Department of Labor notice of intent to sue within the time limit of section 626(d). This appeal followed.

## II

While not precluding the possibility that oral notice in some circumstances might satisfy the requirements of section 626(d), the majority holds that the oral notice allegedly given here "had neither the content nor the clarity of expressed purpose needed to fulfill its statutory office." If an oral notice can ever satisfy the statute, it is difficult to imagine one that would more clearly express the required intent than the statement appellant allegedly made here. In any event, I submit that the majority's holding is both factually and legally incorrect.

Section 626(d) provides that a civil action may not be commenced until the complainant "has given the Secretary not less than sixty days' notice of an intent to file such action." The section then states that "[s]uch notice shall be filed . . . within one hundred and eighty days after the alleged unlawful practice occurred . . . ." [3] It must be conceded at the outset that use of the word "filed" implies that the notice should be in writing. But the section does not make that requirement explicit and there are compelling reasons for not reading it into the statute. The ADEA is remedial legislation whose enforcement in large part depends upon the efforts of

laymen. The terms of this statute should be liberally construed as so as to avoid frustrating potentially meritorious claims on hypertechnical grounds. See *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 193 (3d Cir. 1977); *Moses v. Falstaff Brewing Corp.,* 525 F.2d 92, 93–94 (8th Cir. 1973); cf. *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) (Title VII case). Moreover, the sparse legislative history on this point indicates that unequivocal oral notice should be sufficient. The Act as a whole reflects "a congressional desire to avoid some of the administrative logjams experienced under Title VII" and to simplify enforcement mechanisms. Comment, Procedural Prerequisites to Private Suit Under the Age Discrimination in Employment Act, 44 U.Chi.L.Rev. 457, 467 (1977) (hereinafter referred to as "Comment, Procedural Prerequisites"). See also 113 Cong. Rec. 7076 (1967) (testimony of Sen. Javits before the Labor Subcommittee of the Senate Labor and Public Welfare Committee regarding the ADEA). Thus, in enacting the ADEA, Congress declined to require that notice "shall be in writing under oath or affirmation . . .," as was done in Title VII, 42 U.S.C. § 2000e–5(b). Additionally, the Department of Labor, the agency charged with administering the ADEA, has urged that oral notice can satisfy section 626(d). See Brief for the United States as Amicus Curiae, *Shell Oil Co. v. Dartt,* 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977) (leave to file denied). In light of the strong policy favoring a simplified construction of procedural requirements under the ADEA, the pertinent legislative history and the Department of Labor's administrative interpretation, I would hold that unequivocal oral notice can satisfy section 626(d). See, e. g., *Woodford v. Kinney Shoe Corp.,* 369 F.Supp. 911, 914 (N.D. Ga.1973); *Bishop v. Jelleff Assoc.,* 398 F.Supp. 579, 593 (D.D.C.1974); and *Suther-*

---

**2.** Recourse to the state procedure was subsequently rejected as untimely.

**3.** Section 626(d)(2) also extends the filing time to 300 days under certain circumstances. It is

not necessary to consider whether this section applies here. Cf. *Skoglund v. Singer Co.,* 403 F.Supp. 797, 803 (D.N.H.1975).

*land v. SKF Industries, Inc.,* 419 F.Supp. 610, 615–16 (E.D.Pa.1976).[4]

Furthermore, the majority errs in its conclusion that appellant's oral notice did not in fact "fulfill its statutory office." The purpose of section 626(d) is to force an aggrieved party to promptly notify the Department of Labor of an intent to seek redress, so that the Department can (1) inform the employer of a possible lawsuit based on the alleged discrimination; (2) simultaneously seek an early and informal reconciliation of the parties; and (3) decide whether to sue on behalf of the aggrieved party.[5] See *Dartt v. Shell Oil Co.,* 539 F.2d 1256, 1261 (10th Cir. 1976), aff'd mem., 98 S.Ct. 600 (1977) (equally divided Court); *Moses v. Falstaff Brewing Corp.,* supra, 525 F.2d at 94; *Cowlishaw v. Armstrong Rubber Co.,* 425 F.Supp. 802, 807 (E.D.N.Y. 1977); Comment, Procedural Prerequisites, supra, at 469–70. Since Dow was contacted and conciliation was attempted as a result of Reich's specific oral notice, his actions here amply satisfied the spirit and, I believe, the letter of section 626(d). *See Dartt v. Shell Oil Co.,* supra, 539 F.2d at 1261; *Cowlishaw v. Armstrong Rubber Co.,* supra; *Smith v. Jos. Schlitz Brewing Co.,* 419 F.Supp. 770, 776–77 (D.N.J.1976). Moreover, once given, such notice could not be retroactively invalidated months later by

a letter from a Labor Department official, who was quite possibly unaware of the earlier oral notice.[6] Indeed, since it appears that conciliation is not attempted until the Department receives notice of intent to sue, see *Smith v. Jos. Schlitz Brewing Co.,* supra, 419 F.Supp. at 776, appellant might well have believed that at least part of the Department of Labor deemed his oral notice to be operative.[7]

### III

The majority also holds that Reich's "failure to comply with section 633(b) is a bar to maintenance of the action."[8] Here again, I disagree with both the legal and factual premises of the majority's conclusion.

As an initial matter, it seems that section 633(b) does not require a victim of age discrimination to first file a suit with the applicable state agency. Rather, this section ensures that once an aggrieved person invokes state administrative remedies, the state agency will have sixty days in which to effect informal compliance. Thereafter, a separate federal action may be commenced. See, e. g., Comment, Procedural Prerequisites, supra, at 475–80; *Vazquez v. Eastern Air Lines, Inc.,* 405 F.Supp. 1353 (D.P.R.1975). Thus, Congress viewed section 633 as "provid[ing] for *concurrent* Federal and State actions . . . ." H.R.

4. The majority cites *Hays v. Republic Steel Corp.,* 531 F.2d 1307, 1312 (5th Cir. 1976), as requiring a different result. But that case is distinguishable since the oral statement involved there was equivocal, and the Department of Labor official to whom the oral complaint was given immediately told appellant that a specific written notice of intent to sue was required. Similarly, the tax cases relied on by the majority are inapposite because they involve, as the majority recognizes, "other and more complex considerations."

5. The section imposes two time limits on the discriminatee. The complainant first must file a timely notice of intent to sue, and then, after filing the notice, must wait sixty days before commencing suit.

6. The oral notice was allegedly given to an official in the New York office, whereas the second official was in the New Jersey office of the Department of Labor.

7. Since I would hold that the timely oral notice satisfied section 626(d), I do not reach the question whether these circumstances justify tolling the time limit of that section. I do, however, agree with the majority's implied conclusion that the time periods of section 626(d)(1) and (2) may be tolled in appropriate circumstances. See *Dartt v. Shell Oil Co.,* supra; *Eklund v. Lubrizol Corp.,* 529 F.2d 247, 250 (6th Cir. 1976) (McCree, J., dissenting).

8. Section 633(b) provides in relevant part:
    (b) In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated . . . .

Rep.No.805, 90th Cong., 1st Sess. 5 (1967), reprinted in [1967] U.S.Code Cong. & Admin.News 2213, 2218 (emphasis supplied). Moreover, the Secretary of Labor has asserted that the limitations of this state-federal provision apply *"only* if proceedings have *already* been initiated under existing State law." See *Goger v. H. K. Porter Co.,* 492 F.2d 13, 17 (3d Cir. 1974) (Garth, J., concurring). And such a reasonable construction of an ambiguous statute by the agency charged with its administration is entitled to great deference, see *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).[9]

In addition, the majority's reliance on Title VII cases in construing section 633(b) is also questionable. Cf. *Lorillard v. Pons,* —— U.S. ——, —— & n. 14, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). A careful comparison of Title VII with the ADEA supports the conclusion that section 633(b) does not require prior resort to state administrative procedures. See *Goger v. H. K. Porter,* supra, 492 F.2d at 17; *Vazquez v. Eastern Air Lines, Inc.,* supra, 405 F.Supp. at 1355–57. The legislative history indicates that Congress generally intended different remedial and procedural approaches for the ADEA than had been employed in Title VII, despite the similarity in substantive goals of the two statutes. See, e. g., 113 Cong.Rec. 7076 (1967) (Sen. Javits); *Lorillard v. Pons,* supra. Further, the state-federal provision of Title VII, 42 U.S.C. § 2000e–5(c), appears in the same section as other provisions concerned with procedural prerequisites to suit, whereas section 633(b) is part of a section involved solely with state-federal relationships. More importantly, there is no equivalent in Title VII to section 633(a) of the ADEA, which provides that even if a state proceeding is pending, it

is superseded by a federal action. Thus, the ADEA reflects less deference to state mechanisms than does Title VII. See also H.R.Rep.No.805, 90th Cong., 1st Sess. 2–3 (1967), reprinted in [1967] U.S.Code Cong. & Admin.News 2213, 2215 (indicating congressional doubt as to effectiveness of existing state agencies in curbing age discrimination). I therefore agree with Judge Garth's statement in *Goger v. H. K. Porter, supra,* 492 F.2d at 18, that it was not "the intent of Congress to require, prior to the institution of a Federal action, the commencement of a State proceeding which, under § 633(b), need not be concluded and which in, any event would be superseded by the filing of the Federal action under § 633(a)."

Even if, arguendo, section 633(b) generally requires a complainant to first commence a state proceeding, summary judgment was erroneously granted here. Those courts which have held that resort to state administrative remedies is a prerequisite to suit have, nevertheless, almost uniformly subjected section 633(b) to equitable doctrines. See, e. g., *Hadfield v. Mitre Corp.,* supra, 562 F.2d at 88; *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834, 844 (3d Cir. 1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978). Appellant claims to have had a telephone conversation with a New York state official who stated that since the home office of the defendant was out of state, appellant should invoke his federal remedies. Reich then steadily, albeit slowly, pursued his rights under the ADEA. When a lawyer was finally obtained, a grievance was unsuccessfully lodged with the appropriate state agency. In order to avoid the running of the three-year statute of limitations on his ADEA claim,[10]

**9.** Note also that it is incongruous to say that the failure to file a complaint with the New York Division of Human Rights bars a federal action, when New York law itself allows a grievant to bypass agency relief and sue directly "in any court of appropriate jurisdiction." N.Y.Exec.Law § 297(9). Indeed, the First Circuit has held that a jurisdiction with such a law did not qualify as a "deferral state" within the meaning of section 633(b). See *Lugo Garces v.*

*Sagner International, Inc.,* 534 F.2d 987, 989–90 (1st Cir. 1976), limited by *Hadfield v. Mitre Corp.,* 562 F.2d 84, 86–87 (1st Cir. 1977).

**10.** Since this complaint alleged a wilful discriminatory firing, 29 U.S.C. §§ 626(e) and 255 yield a three-year statute of limitations, which apparently would have expired the day after this action was filed.

appellant filed this action in federal court only five days later. If appellant's allegations are true, then certainly equity might excuse the belated resort to the state remedial mechanism in light of appellant's reliance on the state official's advice, see *Magalotti v. Ford Motor Co.,* 418 F.Supp. 430 (E.D.Mich.1976), which in turn forced appellant to file his federal action less than sixty days after the state proceedings were commenced. Cf. *Skoglund v. Singer Co.,* supra, 403 F.Supp. at 802–03 (untimely resort to state remedy excused). In any case, an appellate court should not decide this equitable issue in the first instance, and I would remand for a determination by the district court. See *Hadfield v. Mitre Corp.,* supra.

For all of these reasons, I dissent.