Kay **BURNS**, James J. Connors, Joseph L. Farrar, Judah J. Harris, Frances B. Klepsch and Jock Thornton, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

The **EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Defendant.**

No. 79 Civ. 4726(MEL).

United States District Court, S. D. New York.

Jan. 27, 1982.

---

Hockert & Flamm, New York City, for plaintiffs; Leonard N. Flamm, New York City, of counsel.

Werner Weinstock, New York City, for defendant; Pepper, Hamilton & Scheetz, Washington, D. C., of counsel.

LASKER, District Judge.

This case arises out of a large scale staff reduction undertaken by defendant Equitable Life Assurance Society of the United States ("Equitable") in 1978 and 1979, in which over five hundred employees were terminated, approximately 360 of whom were over forty years old. The complaint in this action was filed in September, 1979, by Kay Burns and the other named plaintiffs, charging violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"). Over one hundred of Equitable's former employees have opted to join the action,[1] as allowed by 29 U.S.C. § 216(b).[2]

Nearly two years later, on September 1, 1981, the Equal Employment Opportunity Commission ("EEOC") filed an action, No. 81 Civ. 5447, against Equitable, complaining of ADEA violations.[3] As Exhibit A to its complaint, the EEOC attached a list of 434 present and former Equitable employees for whom it seeks liquidated damages, pursuant to 29 U.S.C. § 216(b).[4] Included in that list were a number of the Burns plaintiffs. On September 3rd, EEOC counsel entered a stipulation removing from its Exhibit A all of the Burns plaintiffs.

Equitable now moves to dismiss the instant action on the grounds that dismissal is required by section 626(c)(1) of the ADEA, which provides that:

"Any person aggrieved may bring a civil action ... for such ... relief as will effectuate the purposes of this act: Provided, That the right of such person to bring such action shall terminate upon the commencement of an action by [the EEOC] to enforce the right of such employee under this act."

Equitable interprets section 626(c)(1) as providing that an agency suit cuts off all private rights of action, including those of plaintiffs who have already filed suit. Plaintiffs argue that the section allows an agency suit to cut off only a private plaintiff's right to bring an action subsequent to

1. The ADEA procedures differ from the class action provisions of Fed.R.Civ.Pr. 23, in that, under the ADEA, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in which such action is brought." 29 U.S.C. § 216(b).

2. The ADEA incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 et seq.

3. Actions to enforce the ADEA may be brought either by the aggrieved party or by the EEOC. The enforcement of the ADEA was originally under the authority of the Secretary of Labor, and was transferred to the EEOC in 1979. Consequently, the ADEA, as well as most of the cases discussing it, make reference to the Secretary of Labor, not the EEOC. To avoid confusion, references to the Secretary of Labor will be cited here as [EEOC].

4. Section 216(b) provides that an employer found to be in violation of the Act shall be liable to the aggrieved employees in the amount of their unpaid minimum wages and in an additional equal amount as liquidated damages.

the filing of the EEOC action, not his right to continue to prosecute an action already commenced.[5]

The question presented is a narrow one. There is no dispute that once the agency files an action on behalf of certain plaintiffs, the statute precludes those plaintiffs from filing a private action with respect to the same ADEA violation. The issue here is whether the statute requires the dismissal of a private action which is already pending at the time the agency files its action. Thus, the issue turns on the meaning of the word "bring" in section 626(c)(1)'s provision that "the right of such person to *bring* such action shall terminate upon the commencement of an action by [the EEOC]." Does it mean "bring and maintain," as Equitable contends, or "commence," as plaintiffs contend?

Equitable argues that if Congress had meant "bring" to mean commence, it would have used that term, as demonstrated by the fact that the word "commencement" *was* used in the very same sentence. In addition, Equitable cites language in the legislative history and in cases construing other sections of the ADEA which indicate that Congress intended that, under the ADEA, "private lawsuits are secondary to administrative remedies·and suits brought by the [EEOC]." *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834, 841 (3d Cir. 1977). See also *Reich v. Dow Badische Co.*, 575 F.2d 363, 368 (2d Cir.), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978); 113 Cong.Rec. 34748. Equitable argues that if 626(c)(1) is interpreted to allow the plaintiffs to be represented by both the EEOC attorneys and private counsel, a situation could arise in which private counsel could frustrate EEOC's attempts to settle the case or to conduct it as the agency sees fit, thus thwarting Congressional intent to make private lawsuits "secondary to administrative

remedies and suits brought by the [EEOC]." *Id.* Equitable also contends that its construction of the statute would avoid a multiplicity of litigation.

Plaintiffs naturally respond that the phrase "bring [an] action," is understood in ordinary usage to mean to begin or file an action, and that if Congress had meant EEOC actions to supersede a private action, it could easily have said precisely that. Moreover, plaintiffs argue that the legislative history of the ADEA establishes that it was modeled upon the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and that, under FLSA's cut-off provision, which is nearly identical to the ADEA cut-off provision in dispute here,[6] pending private actions are not terminated by an agency action. Plaintiffs contend that if Equitable's interpretation were accepted, private attorneys would be highly reluctant to undertake ADEA cases, fearing that they could be dismissed on the eve of victory by the EEOC's filing of a suit. Finally, plaintiffs insist that it would be inequitable to allow the EEOC suit, which omits plaintiffs from its claim for liquidated damages, to supersede plaintiffs' action, in which liquidated damages were demanded.

\*       \*       \*       \*       \*       \*

The arguments by both plaintiffs and Equitable regarding the statutory language cancel each other out, or at best, as is frequently the case, are inconclusive in their effect. The contentions consist substantially of the inevitable proposition that the use of particular words establishes that Congress "knew how to say" one thing or another when it wished to do so, and that it should therefore be concluded that when it did not do so, the failure was deliberate. There is only one weakness with this argument: it is not persuasive.

The legislative history contains no discussion of the point in dispute here. In refer-

---

**5.** The EEOC has filed an affidavit in opposition to the instant motion to dismiss. (Affidavit of James L. Lee, dated September 8, 1981.)

**6.** The cut-off provision of the FLSA states:

"The right provided by this subsection to bring an action by or on behalf of an employee ... shall terminate upon the filing of a complaint by the Secretary..."
29 U.S.C. § 216(b).

ence to section 626(c)(1), the House Report simply states that "rights of individuals to bring actions shall terminate when the Secretary commences an action." H.R.Rep.No. 805, 90th Cong., 1st Sess. 2, *reprinted in* [1967] U.S.Code Cong. & Ad.News 2213, 2218. While the absence of any discussion of the provision supports plaintiffs' contention that a customary meaning of "bring" was understood and intended by Congress, both parties have argued that their proposed interpretation is the more customary. Equitable argues that by "bring," one ordinarily means "bring or maintain," while plaintiffs assert that to bring an action means, in common-place language, to file a lawsuit. While the answer is by no means obvious, plaintiffs' interpretation is closer to our understanding of the ordinary meaning of the phrase "to bring an action." In fact, when the precise question at issue here was before then District Judge Pierce, in *Sheppard v. National Broadcasting Co., Inc.*, 22 EPD ¶ 30876, 79 Civ. 3877 (S.D.N.Y. March 19, 1980), he denied the defendant's motion to dismiss, relying almost entirely on his interpretation of the statutory language:

"This section only restricts the right to 'bring an action' thereunder. The statute does not expressly limit the right of a complainant to *continue* an action which was commenced prior to the commencement of a related action by the EEOC."

However, the disposition of this motion need not rest solely on an exegesis of ordinary language usage. While the legislative history does not address the precise question at issue, it does specify that "[t]he investigation and enforcement provisions of the bill essentially follow those of the Fair Labor Standards Act." [1967] U.S.Code Cong. & Ad.News, *supra*, at 2218. The FLSA contains a cut-off provision which is very similar to the ADEA cut-off provision and, fortunately, the FLSA legislative history is more enlightening. The House-Sen-

ate Conference Report as to that statute states:

"The filing of the Secretary's complaint against an employer would not, however, operate to terminate any employee's rights to maintain ... a private suit to which he had become a party plaintiff before the Secretary's action."

Conf.Rep.No.327, 87th Cong., 1st Sess. 2, *reprinted in* [1961] U.S.Code Cong. & Ad. News 1620, 1706, 1714.

It is true, as Equitable argues, that if Congress had intended that the ADEA cut-off should have precisely the same meaning as the FLSA cut-off, Congress could have simply incorporated it by reference in the ADEA. However, we conclude that the adoption of nearly identical language is, in the absence of any suggestion to the contrary in the legislative history, and particularly in view of Congress' express intent to use "essentially" the same enforcement provisions in the ADEA as in the FLSA, sufficient to indicate that the two provisions should be interpreted as the same.[7]

This conclusion is supported by an evaluation of the policy arguments advanced by the parties. Plaintiffs' argument that, if Equitable's interpretation of the statute is accepted, the rights of private litigants to enforce the ADEA will be severely diminished, is persuasive. Private attorneys may very well be discouraged from accepting ADEA cases if the rule is that no matter how much effort they have expended on a suit, so long as it has not been reduced to judgment, the EEOC may cause the case to be dismissed by bringing its own suit. This concern is particularly serious where plaintiffs are unlikely to be able to afford counsel other than on a contingent fee arrangement.

Of course, an attorney always faces the possibility that his case may be dismissed. However, Equitable interprets the statute so as to create the unusual circumstance

7. The legislative history of Section 633, the provision which cuts off state age discrimination cases in favor of ADEA cases, also casts light on Congress' intent with regard to Section 626(c)(1). The House Report as to Section 633 states: "Commencement of an action under this act shall be a stay on any State action *previously* commenced." [1967] U.S.Code Cong. & Ad.News, *supra* at 2219 (emphasis added).

that the *stronger* the case; that is, the more egregious the employer's conduct, the more likely it is to invite EEOC action, which would result in dismissal of the private suit.

Moreover, under Equitable's interpretation, the EEOC could wait until several years of litigation have elapsed before filing its own action, resulting in an enormous waste of the resources of the plaintiff, his attorney, and the Court. At that point, the plaintiff, who may have invested substantial time and resources in discovery and otherwise in preparation of his case, would lose the benefit of this investment.

Equitable's contention that this possibility is too remote to warrant consideration is belied by the procedural history of this very case. The Burns plaintiffs filed their action two years before the EEOC's action was filed. During that period, the parties have participated in discovery, motion practice, and several court conferences, as well as expending time in soliciting the participation of the over one hundred opt-in plaintiffs.

If Equitable's interpretation were accepted, private counsel might be well-advised to wait as long as the statute of limitations permits before filing an ADEA action in order to minimize the likelihood of the EEOC filing an action regarding the same violation. In effect, Equitable is urging an interpretation that would tend to cause claims to be filed when they are not fresh, with all of the problems of faded recollection and lost documentation inherent in stale assertions.

Finally, since the Act is clearly intended to protect the plaintiff-employee's rights, it is unlikely to have been Congress' purpose to authorize the EEOC to terminate a private litigant's pending action without at least demanding the same relief for that litigant that his chosen counsel had demanded.

Equitable's arguments to the contrary are not compelling. First, while the cases discussed by Equitable, cited above, do indicate that, in certain circumstances, private actions are secondary to EEOC actions, there is no indication in either the legislative history or the case law pertinent to the ADEA that the subordination of private actions to agency actions was intended to be so great as to undermine the viability of an existing private action. To the contrary, the legislative history of the Act indicates that Congress intended the private right of action to be a significant element in the enforcement of the ADEA. See, for example, the remarks of Representative Halpern: "Most importantly, [the ADEA] gives the aggrieved persons, *along with*, and through, the [EEOC], just and adequate channels to enforce the bill." 113 Cong.Rec. 34749 (emphasis added). See also the House Report on the ADEA, [1967] U.S.Code Cong. & Ad.News, *supra*, at 2218, stating that "the [ADEA] authorizes the employee, as well as the [EEOC] to seek remedies through court actions.", which suggests the co-equal status of employee and EEOC suits.

As for Equitable's concerns in regard to multiplicity of litigation, it does not appear that our disposition adds in any but the most marginal way to its volume. The statute allows each aggrieved person to retain his own counsel and sue individually. Moreover, in those cases in which the EEOC chooses to file an action, there is nothing in the statute precluding the EEOC from filing on behalf of only those persons who have not filed private actions. Thus, even under Equitable's interpretation, there is no mechanism in the statute to save a large company such as Equitable from defending simultaneously against a large number of individual actions, as well as an EEOC action. The value of the slight effect which adoption of Equitable's interpretation would make on the multiplicity of ADEA litigation is outweighed by the policies, discussed above, which militate against such an interpretation.

For the reasons stated above, Equitable's motion to dismiss is denied.

It is so ordered.